TECHE LINES, INC., v. KEYES.

(Division A. Feb. 12, 1940.)

[193 So. 620. No. 33881.]

Stevens & Stevens, of Jackson, and O. M. Oates, of Bay Springs, for appellant.

784

Homer Currie, of Raleigh, and H. L. Bayless, Jr., of Bay Springs, for appellee.

Argued orally by **O. M. Oates** and **J. M. Stevens, Sr.,** for appellant, and by **Homer Currie** and **H. L. Bayless, Jr.,** for appellee.

**Griffith, J.,** delivered the opinion of the court.

On March 3, 1938, appellee was a passenger for hire on a motor bus of appellant carrier, her destination being Quitman, Miss. At a point about eight miles before reaching Quitman the bus suddenly left the highway, ran across the highway ditch and along the course of a roadside rail fence, breaking down the fence for about seventy feet. Appellee was sitting on a front seat and was thrown therefrom with such force that she was painfully and severely injured.

The immediate cause of the accident was that there was a soft or boggy place in this road at this particular location, the soft or boggy place being about 20 to 25 feet in length along the road and within the driveway portion to the right of the center thereof. Although this condition in the road at this point had existed for months and years, and was known to all who had had opportunity to be acquainted with that road, the roadway had been recently dragged by the public authorities, so that the defective or dangerous place aforesaid was presently con-

cealed from a driver unacquainted with the situation. But the dragging of a road, as everybody knows, does not remedy defects such as existed here, but only smooths them over, has no other substantial effect than merely concealing them for the time being.

The driver of the bus on the occasion in question was making his first trip over this particular road and had received no information about this dangerous place. Being within this information, he approached and attempted to pass over this place without taking the care which was requisite to a safe passage along or around it with such a heavy vehicle—with the result that the rear right dual wheels suddenly sank into this bog, and threw the bus wholly out of control, whence it took the course above described. The bus weighed about 16,000 pounds, and at the time was traveling at the speed of from 30 to 35 miles per hour.

From a judgment allowing damages to appellee for the injury aforesaid, the carrier has appealed; and so far as the issue of liability is concerned, we dispose thereof by taking as true those facts which were developed by the appellant during the trial, together with the facts which are undisputed.

The rule which is agreed upon and established by all the cases is that a common carrier by motor bus owes the duty to its passengers to exercise the highest degree of care and precaution for their safety that is consistent with the practical conduct of its business; and we are in accord with the rule as stated in Oliver v. Union Transfer Co., 19 Tenn. App. 694, 71 S. W. (2d) 478, 481, that a carrier of passengers by motor bus is not liable in damages for an accident caused by unknown defects in a public road that has every appearance of being safe and solid, and which defects cannot be detected by the highest degree of care consistent with the practical conduct of its business. But the converse of that rule holds equally good, that such a carrier will be liable for an injury caused by a defect in the road known to the carrier, or of

which it should have known, and concerning which, in the reasonable and practical conduct of its business, it could and should have informed its drivers, so that they and each of them could and would avoid the said defect or danger.

The argument of appellant is that the bus company is not charged with the duty of constructing and maintaining the public roads over which it operates, and that a driver of a motor bus has the right to assume that a highway which is open to unrestricted use is reasonably safe, and when there are no present indications to the contrary, may proceed upon that assumption. This argument, when traced to its end would lead to this: The bus company has knowledge that a certain bridge has become weakened to such an extent as to make it dangerous for the use of heavy vehicles, although there is nothing in the appearance of the bridge which would give a driver any notice thereof. The bus company, with this knowledge, but without informing its driver and without inquiry whether the driver knows of the dangerous bridge, sends a heavy bus loaded with passengers in charge of a driver who does not know of the danger, and who, seeing nothing about the bridge to indicate danger, attempts to cross it, and the bridge falls in, drowning all the passengers,—and the argument is that because the particular driver did not know of the danger, and saw no indications of it, the bus company would not be liable. To which our reply is that such a contention must be rejected.

A case definitely in point, upon the principle involved, is Littlejohn v. Fitchburg R. Co., 148 Mass. 478, 20 N. E. 103, 105, 2 L. R. A. 502, opinion by Justice Holmes, when he was a member of that court. The facts were that the railroad was constructed and owned by the Commonwealth and under the contract with the operating company the Commonwealth was to maintain the tracks and keep them in good repair. A derailment occurred because of a defect in an embankment, and by the filling of

ditches which had occurred about two months prior to the accident. The operating company requested a peremptory ruling in its favor, because the evidence disclosed no indications of danger to those in charge of the train at the time of the accident. In ruling against this request, the court said in a paragraph which contains a concise summary of the precise law on the subject as follows: "If the danger might have been discovered by the exercise of due care, the defendant will be liable, whether the defect was in the original construction of the road or was due to a failure on the part of the Commonwealth to make necessary repairs, or however otherwise it may have been caused. If the defendant carried its passengers into a place which it knew or ought to have known was dangerous, it was negligent, although it did not create, and had no right to remove, the danger."

The driver of a common carrier motor bus is the engineer, the conductor, the brakeman and the flagman on that bus. In the practical conduct of the business of the company, the drivers are among those best enabled to discover and to know of dangerous places or situations along their routes, and in the discharge of the highest degree of care and precaution for the safety of its passengers it is entirely consistent with the practical conduct of the business of the carrier that reports shall be required of its drivers in respect to such dangerous places and that the knowledge furnished by these reports shall be passed on to all other drivers using the involved route or routes. Not to require this would be a failure to exercise the highest degree of care and precaution for the safety of passengers—and we are not intimating here that information required of and obtained from the drivers is the only source to which the carrier is obliged to look.

Here this particular route had been in use by the defendant motor bus carrier for more than a year, during which time its driver, Boudreaux, had learned of this

particular dangerous place and how to avoid it. Boudreaux testified:

"Q. State to the court and jury what you knew about that ground. A. It was just a seepy spot. We never did have much trouble there, but when I got there I never went to the right, I held to the center of the road, I knew what kind of a spot it was.

"Q. You knew that spot by having run over it. How long had you run over that? A. We had detoured since October, 1936.

"Q. You had been on that run during all that time? A. Yes, sir."

And in verification we will quote the language of appellant's brief: "All of the credible testimony in the record shows that at the very point where the bus left the highway, there was a seepy and treacherous place in the highway. Prior to this accident, several trucks and automobiles had bogged down or left the highway. Operator Boudreaux by long service on this highway was familiar with this seepy place, and testified that when he approached the point he veered to the center of the highway instead of driving as busses are ordinarily required to do on the right hand side."

Yet the testimony is undisputed that the carrier sent this heavy bus along that route on this day in the sole and unaccompanied charge of a driver who had never been on that route before and to whom not one word of information was given about this dangerous place. Had he been informed of it, as the carrier's high duty of precaution required, he would have approached the place with care and with his bus slowed down so as to be under careful control, and he would have gone to the left of this dangerous spot, as Boudreaux always did, and the unfortunate injury to the plaintiff passenger would not have happened; and this, we think is all that is necessary to be said on the issue of liability.

As to the amount of the verdict, $1,250, it seems to us,

upon the facts, to be reasonable, and certainly, it is not so excessive at to call for interference at our hands.

Affirmed.