MISSISSIPPI CITY LINES, INC., *v.* BULLOCK *et al.*

(Division B. April 12, 1943.)

[13 So. (2d) 34. No. 35308.]

Hannah, **Simrall** & **Foote**, of Hattiesburg, for appellant.

**Homer W. Pittman** and **Currie & Currie**, all of Hatties-burg, for appellees.

Argued orally by **T. C. Hannah,** for appellant, and by **N. T. Currie** and **Homer W. Pittman,** for appellee.

**Griffith, J.,** delivered the opinion of the court.

On February 27, 1942, appellant was an authorized carrier of passengers by motorbus between the City of Harriesburg and a point known as Palmer's Crossing and along a heavily traveled highway. About five o'clock on that afternoon, Ray Bullock, a boy about twelve years old, took passage on one of appellant's busses to go from the city to his home south of the corporate limits of the city. The place at which the boy wanted to leave the bus was at a regular stop on the west side of the highway near a mail-box, which box was situated 41 feet south of a concrete bridge. The bridge was 16 feet wide, and the highway pavement was 18 feet wide, but on each side of the pavement were safe and sound shoulders 5 feet wide made of gravel. Thus the highway, including the shoulders, was 28 feet wide. The bus was about 7 feet wide and 25 feet long.

Just before the bridge was reached, the boy gave the customary signal to the driver by pressing the buzzer,.

which constituted an order to the driver to let the boy off at or near the mail-box stop, already mentioned. The driver obeyed the signal, and as the front end of the bus cleared the bridge the driver turned the bus to the right and came to a stop, so that the right front end of the bus was on the west-side shoulder, leaving, however, adequate room for the boy to alight on the shoulder; but the bus did not go far enough to bring both the front and rear right sides thereof parallel with the highway so as to give as much highway clearance as practicable, but when the bus stopped, it was then standing obliquely with the rear end of the bus about four feet south of the bridge and its left rear wheel about two feet to the left or east of the center of the pavement.

The exit door was at the front right-hand side of the bus, and when it came to a stop, the driver opened the door and let the boy out, and the boy alighted on the gravel shoulder west of the pavement. As already mentioned, the highway opposite this point was heavily traveled, and as the bus driver opened the door to let the boy out the driver saw an automobile driven by a woman approaching from the south at a high rate of speed. The driver, however, said nothing to the boy. When the boy alighted, he did not remain until the bus could move away, but he proceeded at once and evidently on the run along the gravel shoulder on the west side of the bus and around its rear and onto the pavement and into the path of the woman aforementioned, and was hit by the woman's car, resulting in injuries to him from which he died the next day.

The boy was employed as a newsboy, delivering newspapers in the City of Hattiesburg. His home was south of the city, as stated, and was located about a quarter of a mile to the east of the highway and in direction opposite said mail-box stop. The means which he had customarily been using to get home after the conclusion of his duties for the day as delivery boy was to take the bus and get off at the point already mentioned.

Appellees, as the next of kin of the decedent, instituted suit against the bus company and the woman who was driving the northbound automobile, and recovered judgment in the trial court against both, from which judgment the bus company alone has appealed.

As against the bus company appellees averred: (1) That the manner in which the bus stopped so as not to leave the clearance required by statute on its east or highway side was an actionable negligence; (2) that it was the duty of the bus driver to warn the boy of the approaching automobile; (3) that it was negligence to let the boy off while the approaching northbound automobile was in sight; (4) that the place where the boy was let off was a dangerous place so that the relationship of carrier and passenger had not terminated when the injury occurred; and (5) that the position of the bus constituted an unlawful obstruction and was a continuing or concurrent negligence which contributed to the ultimate event of the injury.

Although it was proved, as stated, that the position in which the bus stood was violative of Section 90, Chap. 200, Laws 1938, as construed in the recent case, Teche Lines, Inc., v. Danforth (Miss.), 12 So. (2d) 784, not yet reported [in State report], we are of the opinion that this was not the proximate cause of the injury, and we shall reach and dispose of the other contentions during the further course of this opinion.

Although one may be negligent, yet if another, acting independently and voluntarily, puts in motion another and intervening cause which efficiently thence leads in unbroken sequence to the injury, the latter is the proximate cause and the original negligence is relegated to the position of a remote and, therefore, a nonactionable cause. Negligence which merely furnishes the condition or occasion upon which injuries are received, but does not put in motion the agency by or through which the injuries are inflicted, is not the proximate cause thereof. The question is, did the facts constitute a succession

of events so linked together as to make a natural whole, or was there some new and independent cause intervening between the alleged wrong and the injury? 38 Am. Jur., p. 702; Thompson v. Mississippi Cent. R. Co., 175 Miss. 547, 554, 166 So. 353. And so say all the authorities, among which, as a striking illustration, is Bufkin v. Louisville & N. R. Co., 161 Miss. 594, 137 So. 517.

Here, according to the substantially undisputed testimony, the bus was placed, so far as the exit door was concerned, so that the boy could and did alight on a sound and safe gravel shoulder, not on, but away from, the paved or traveled portion of the highway. It was a perfectly safe place for him to stand and remain until the bus should move forward on its accustomed way. The relation between the carrier and the boy as a passenger was thereupon at an end, and the carrier had the right to assume that the boy would so remain until the bus moved away, as is customarily done by passengers when alighting from busses or street cars. But instead of doing so, the boy of his own volition set himself in motion, and passed rapidly down the west side of the bus and out from its rear and into the traveled highway where he was struck and killed, as already stated.

It is obvious, therefore, that if this is not clearly a case of an intervening independent cause, it would be next to impossible to put a case where that doctrine would actually apply. And it is appropriate to repeat that the passenger was not put off in the traveled portion of the highway where cars were passing on the same side of the bus from which the passenger alighted, as was the case in Wood v. North Carolina Public-Service Corporation, 174 N. C. 697, 94 S. E. 459, 1 A. L. R. 942, on which appellees so strongly rely. Nor have we here a case where there was a collision with the bus and an injury to a passenger then therein or to a person in the other colliding vehicle, and cases dealing with a situation of that kind are not in point here.

A number of cases dealing with a parallel state of facts have been decided in the courts of other states. The case which appears to have been cited and quoted from more often than any other is Waldron v. Southwestern Bus Co., 42 Ohio App. 549, 182 N. E. 596, and we quote that opinion in full:

"The plaintiff was a passenger in the day-time on a bus of the defendant company from Norwalk . . . intending to alight at Townsend, about seven miles east of that city. The bus had a regular stopping place just before crossing an intersecting road at that point, but on the day in question failed to stop at the usual place. Miss Waldron then spoke to the operator, and he continued to proceed until he had crossed the intersecting road, and then stopped. The driver thereupon opened the bus door for her, and she alighted close to the southern edge of the pavement, walked west to the rear of the bus, which immediately started on, and then waited for a number of automobiles to pass which were traveling in an easterly direction. She then started to walk north across the road, and after taking several steps was struck and injured by a west-bound automobile. . . .

"The defendant company, while she was a passenger, owed her a high degree of care for her safety, but she alighted from the bus in a place of safety and the relation of carrier and passenger thereupon terminated. The proximate cause of her subsequent injury was either her own negligence in walking in front of an approaching automobile, or the negligence of the operator of such automobile, and the defendant was in no sense responsible for the injury resulting therefrom. Having discharged the passenger in a place of safety, there could be no causal connection between that act and the injury which she suffered. She was familiar with the surrounding conditions, and the operator of the bus owed no duty to warn her of approaching automobiles."

In Lewis v. Pacific Greyhound Lines, 147 Or. 588, 34 P. (2d) 616, 618, 96 A. L. R. 718, it was complained that

the bus company had discharged the plaintiff on the wrong side of the highway, in the nighttime, without warning him of approaching vehicles, and the court said: ''In the instant case the evidence discloses without contradiction that the plaintiff was not injured while engaged in alighting from the bus. It also appears . . . that he was discharged as a passenger on the right side of the bus. He went out the front door unto the gravel shoulder of the pavement. . . . After having thus alighted in safety, did the relationship of carrier and passenger continue while he walked 35 feet to the rear of the bus and half way across the pavement, which was 16 feet wide? We think not. Unquestionably the plaintiff walked from a place of safety into a place of danger. . . . No case has been cited, based upon a similar state of fact, where liability has been sustained. To hold otherwise would make the carrier an insurer.'' And, after quoting with approval the opinion in the Waldron case, supra, the court said further: ''Assuming, but not conceding, that the defendant bus company was negligent in failing to discharge the plaintiff as a passenger on the west side of the highway . . . such negligence had no causal connection with the injury sustained. . . . We can reach but one conclusion, viz., that the proximate cause of the injuries of which plaintiff complains was either the negligence of the driver of the car which struck him or his own negligence in failing to exercise due care to avoid being injured while undertaking to cross the highway.''

In Corrigan v. Portland Traction Co., 157 Or. 496, 73 P. (2d) 378, the material facts were substantially similar to the case at bar, and the opinion, in denying liability, quoted from and approved both the Waldron and Lewis cases, supra, and this was the case of a thirteen-year-old boy.

In Greeson v. Davis, 62 Ga. App. 667, 9 S. E. (2d) 690, 692, a school bus driver was charged with negligence in discharging a school girl fourteen years old on the east

side of the highway, instead of the west side next to her home, and without warning or assisting her, when the highway was being heavily traveled at the time. The evidence showed that the bus stopped at the customary place, and that the door was opened so that the child could alight, and did alight, on the shoulder way from the main highway, and the child thereupon ran around to the rear of the bus and into the highway when she was struck by a rapidly moving truck. The court said that the carrier is "under a duty to deposit his passenger at a reasonably safe place for alighting and crossing the street, but is under no obligation to wait until approaching automobiles have stopped or to warn him of the usual dangers of traffic which in the passenger's exercise of ordinary care would be avoidable;" and the court went on further to point out that there was no occasion for making an exception as to a child shown to be of such age and experience as to appreciate the danger of the situation. This case was approved and followed in Jordan v. Wiggins, 66 Ga. App. 534, 18 S. E. (2d) 512, 515, which involved a child of the same age and a similar state of facts, and the court there said further: "The duty of the bus driver was discharged when she reached the place of safety he had arranged for her by causing her to alight on the shoulder of the road, and no duty rested upon him to warn her of the danger of approaching automobiles which in the exercise of ordinary care she could have avoided."

We forbear the lengthening of this opinion by a further digest of cases of which there are a number of others in point, but we will add a reference to Cain v. Georgia Power Co., 53 Ga. App. 483, 186 S. E. 229 and Powers v. Standard Oil Co., 98 N. J. L. 730, 119 Atl. 273, both of which contain valuable discussions on proximate cause, and especially the Powers case, and each of which involved the death of a child when the negligence charged was the unlawful manner in which the bus or truck was parked or stopped and around which the child went into the traveled highway and was killed by a passing vehicle.

All these cases hold, and we concur therein, that, where the facts are such as we have here before us, (a) the injury is the remote and not the proximate consequence of the negligent or unlawful position in which the bus was stopped; (b) the bus driver was under no duty to warn of the danger of approaching vehicles; and (c) when the passenger has alighted at a sound place off and away from the traveled portion of the highway and where the passenger could safely stand and remain, the relation of carrier and passenger is thereby at an end.

The extreme contention urged by appellees that the bus driver was negligent in opening the bus door and allowing the boy to alight when an approaching automobile was in sight, carries its own refutation when it is considered that on heavily traveled highways, as was the highway here, there is scarcely a time when an automobile is not within sight either from the front or from the rear. The reason for which the public has called into service the transportation facilities of common-carrier busses on the public highways, is that the people living along such highways may have a convenient and economical means to go to and from stopping places adjacent to their homes or places of business or employment. Were any such rule adopted and enforced as urged by appellees, it would make public busses devices for imprisoning passengers, immobile on the roadside, instead of vehicles for transportation. The duty of care as to safety is not the only duty of carriers—the obligation to transport all passengers with a reasonable degree of dispatch is a duty of equal dignity. Compare Hancock v. Illinois Cent. R. Co., 158 Miss. 668, 131 So. 83. The duty of care required of a common carrier by motor bus is that which at the same time is consistent with the practical conduct of its authorized business. Teche Lines, Inc., v. Keyes, 187 Miss. 780, 786, 193 So. 620, 126 A. L. R. 1080.

Appellees have earnestly urged that all that has above been said should not be applied in the case of a twelve-year-old child, or to any child under fourteen, upon the

presumption that a child under that age cannot be charged with contributory negligence. In our own recent case of Tri-State Transit Company v. Lee, 191 Miss. 42, 2 So. (2d) 547, it was held that a bus company is under no obligation to transport a thirteen-year-old child with any more care or consideration than an adult, which duty is to exercise care to carry him to his destination within a reasonable time; and the court cited Gage v. Illinois Cent. R. Co., 75 Miss. 17, 21 So. 657, which was of a child only seven years old.

But even if it may be said that this rule should be varied according to some peculiar or special set of circumstances, there is no occasion to do so in this case; for, as already stated, the lad here injured was employed as a newsboy in one of our largest cities, an employment which gave him such ample and daily opportunities to observe and learn the dangers of highway traffic as to make him the equal, if not the superior, in that respect as compared with the average adult. See on this point the Greeson and Jordan cases, supra. Moreover, the dominant point here involved is not contributory negligence, but proximate cause, and, as observed in Howell v. Illinois Cent. Railroad Co., 75 Miss. 242, 251, 21 So. 746, 36 L. R. A. 545, wherein advantage was sought to be taken by the plaintiff in the fact that the injured boy was only thirteen years old and could not be charged with contributory negligence, the court pointed out that contributory negligence has no place in the equation when there is no causal connection between the defendant's negligence and the subsequent injury.

Finally, it is urged by appellees that had the bus been stopped in compliance with Section 90 of the Highway Traffic Act, there would have been several feet additional clearance at the rear of the bus, and this would have furnished the lad a wider range of vision by which he might have seen the approaching automobile in time to draw back, and that it would have given the automobile driver a wider clearance by which she might have swerved so

as to miss the boy. Similar contentions were made in both the Powers and Cain cases, supra, and were disallowed. In our own case, Bufkin v. Louisville & N. Railroad Co., supra, a like argument, founded in speculation, was made—that had the railroad not been violating the law by the excessive speed, the persons who are running to catch the train would not have had to run and, therefore, would not have collided with the plaintiff, knocking him under the cars, and that save for the excessive speed plaintiff would have had time to extricate himself before the wheels reached him, and that, therefore, the negligence of the railroad was a continuing and concurrent negligence. The court said in response to the argument that [161 Miss. 594, 137 So. 518] ''the negligence of appellee [the railroad] was going on before appellant's injury, during the time of his injury, and continued thereafter,'' but that nevertheless the proximate cause of the injury was the ''independent, intervening negligence'' of the person who knocked the plaintiff down. He was the person who put in motion an intervening cause which efficiently thence led in unbroken sequence to the injury.

It follows that appellant bus company was entitled to the peremptory charge which was requested by it, and that a judgment to that effect must be rendered here. There having been no appeal by the woman who was driving the automobile which struck the boy, the judgment against her stands as rendered by the trial court.

Reversed, and judgment here for appellant.