188 So.2d 246 (1966)
James WHITTEN, James Williams and Wigley & Culp, a Corporation
v.
Edwin G. LAND.
No. 44007.
Supreme Court of Mississippi.
June 20, 1966.
*247 Butler, Snow, O'Mara, Stevens & Cannada, Jackson, Holcomb, Curtis & Connell, Brewer, Brewer & Luckett, Clarksdale, for appellants.
Riddell & Dabbs, Quitman, for appellee.
INZER, Justice:
This is an appeal by James Whitten, James Williams and Wigley & Culp, a corporation, from a judgment of the Circuit Court of Coahoma County wherein appellee, Edwin G. Land, Jr., obtained a verdict for $93,000 as damages for personal injuries sustained as the result of an automobile collision. Upon motion for a new trial by appellants, the circuit judge ordered a remittitur of $23,000, thus reducing the judgment to $70,000. From this action of the trial judge appellee, Edwin G. Land, Jr., cross-appeals.
Edwin G. Land, Jr., plaintiff in the court below, hereinafter referred to as Land, sued Williams and his employer, Wigley & Culp, hereinafter sometimes referred to as Williams, and James Whitten and his employer, Charles Pfizer & Company, hereinafter referred to as Whitten.
The collision occurred on State Highway No. 6 in Quitman County on April 27, 1962, between 5:00 and 5:30 p.m. on an overcast, rainy day. It involved three vehicles, all traveling in a westerly direction on a two-lane 20-foot concrete highway. James Williams, employed by Wigley & Culp, was on his master's business and was driving his employer's Chevrolet panel truck west on Highway No. 6 at about 25 to 30 miles per hour when his truck developed mechanical trouble. Land, driving a 1961 Chevrolet pickup truck belonging to his employer, Delta Spray Company, overtook Williams about three-fourths of a mile from the point *248 of the collision. Land noticed that Williams' truck in front of him was spitting, sputtering, and backfiring, but Land was unable to pass the truck because of the curve in the highway and because of oncoming traffic from the west. The truck driven by Williams gradually slowed down and finally stopped in the middle of the north lane of the highway about five-tenths of a mile west of the curve in the highway. At the time Williams stopped he had passed two places where he could have driven his vehicle off the highway after his truck developed trouble. When Williams stopped, Land was forced to bring his vehicle to a stop about 10 feet behind the truck. He still could not pass because of the oncoming traffic.
Whitten, driving a 1962 Pontiac belonging to his employer, was overtaking these vehicles, and when he rounded the curve, he saw the two vehicles. He was traveling at about 55 miles per hour and thought that the vehicles in his lane of traffic were moving very slowly at that time. He had driven from Atlanta that day and was on his way to Marianna, Arkansas, on a personal mission. When Whitten reached a point about 200 yards from where the two vehicles were stopped in the highway, he realized that they were not moving. All vehicles traveling the highway had their lights on, including the three vehicles here involved. Although Whitten was 200 yards away when he ascertained that these vehicles were stopped in his lane of traffic, he failed to bring his vehicle to a stop and struck the rear of the pickup truck driven by Land with force sufficient to propel it forward into the rear of the panel truck driven by Williams. The force of the blow knocked Land backward and then forward into the steering wheel. A.C. Chambliss was riding in the pickup truck with Land and he was thrown under the dashboard. Whitten did not explain why he was unable to stop his vehicle within the 200 yards.
At the point where Williams stopped the shoulder of the road was of sufficient width for him to have driven his truck completely from the travel portion of the highway. Williams said that the shoulder did not appear to be wide enough for him to drive his truck from the highway, but that he didn't pay too much attention to this fact because the shoulder was wet and the grass looked slick. Only about 30 seconds elapsed between the time that Williams stopped his vehicle and Land stopped behind him until the collision occurred. As a result of the accident Land received severe and permanent injuries which will be discussed later in this opinion.
The issues joined by the pleadings in this case are:
(1) Was Williams guilty of any negligence that proximately caused or contributed to the accident, and if so, was the negligence of Whitten an efficient intervening cause which isolated the negligence of Williams;
(2) Was Whitten guilty of negligence in driving his vehicle into the rear of Land's vehicle, and if so, was he acting in the scope of his employment at that time;
(3) Was Land guilty of any negligence that proximately caused or contributed to the accident by either stopping too close to the rear of Williams' truck or suddenly stopping his vehicle in the front of Whitten's vehicle.
It is not contended that the proof substantiates the charges by Whitten and Williams that Land was guilty of contributory negligence. It is contended by Whitten that the court was in error in instructing the jury that Land was not guilty of any negligence.
At the conclusion of the evidence on behalf of the plaintiff the trial court granted a motion on behalf of Pfizer & Company for a peremptory instruction instructing the jury to find for it. No appeal was taken from this action and Pfizer & Company is no longer involved in this suit. The trial court overruled a motion on behalf of Williams, Wigley & Culp for a peremptory instruction *249 directing the jury to find for them. At the conclusion of all the evidence the court instructed the jury on behalf of Land to find in his favor against Whitten on the question of liability. Williams, Wigley & Culp, and Whitten are represented by separate counsel on this appeal and they have filed separate briefs. The issues raised in the briefs of Williams, Wigley & Culp for the most part, are different from those raised by Whitten. We will discuss only those assignments of error which we consider merit discussion.
It is contended by Williams, Wigley & Culp that the trial court was in error in refusing to grant its motion for a directed verdict and in refusing to instruct the jury peremptorily to find for them. It is urged that although Williams was guilty of negligence in stopping his vehicle on the paved portion of the highway, that such act only created a condition or occasion upon which Land's injuries were incurred, and that the negligence of Whitten was an efficient intervening cause and the sole proximate cause of the accident. They rely upon the cases of Mississippi City Lines v. Bullock, 194 Miss. 630, 13 So.2d 34, 145 A.L.R. 1199 (1943) and Bufkin v. Louisville & N.R. Co., 161 Miss. 594, 137 So. 517 (1931). These cases are clearly distinguishable on the facts. We are of the opinion that this case is controlled by decisions in McCorkle v. United Gas Pipe Line Co., 253 Miss. 169, 175 So.2d 480 (1965); Ford & Houston Contracting Co. v. Moore, 253 Miss. 314, 174 So.2d 716 (1965); Planters Wholesale Grocery v. Kincade, 210 Miss. 712, 50 So.2d 578 (1951); Gulf Refining Co. v. Brown, 196 Miss. 131, 16 So.2d 765 (1944); Cumberland Tel. & Tel. Co. v. Woodham, 99 Miss. 318, 54 So. 890 (1910); and many other cases to the same effect. We are further of the opinion that the trial court was not in error in overruling the motion for a directed verdict because under the facts in this case it was a question for the jury to determine whether Williams, Wigley & Culp were guilty of any negligence that caused or contributed to the accident that resulted in Land's injuries.
Williams, Wigley & Culp assign as error the granting of Instruction No. 1 requested by Land and found on page 267 of the record. This instruction, based upon Mississippi Code Annotated section 8215 (1956), is relative to stopping, parking or leaving standing vehicles on the main traveled portion of the highway. We have carefully considered this instruction together with the instructions granted at the request of Whitten and Williams, Wigley & Culp, on the same point, and when the instructions are read together, they correctly state the law and furnished a sufficient guide for the jury on this question. It is clear when all the instructions are read together involving this point, that the jury was instructed that if they believed it was not reasonably practicable for the truck driver Williams to move or drive his truck off the paved portion of the highway and on to the shoulder or other outlet before the accident occurred, then he was not guilty of any negligence and the jury was required to return a verdict in favor of Williams, Wigley & Culp.
We find no error in the admission into evidence of the photographs complained of by Williams, Wigley & Culp. Due to the pecular facts and circumstances surrounding the admission of these photographs, the trial judge did not abuse his discretion in admitting them in evidence.
Insofar as Williams, Wigley & Culp are concerned, we are of the opinion that there was sufficient evidence from which the jury could properly find that they were guilty of negligence that caused or contributed to the accident and the resulting injuries to Land. There is no question relative to the liability of Whitten.
It is urged by Whitten that the trial court was in error in instructing the jury on behalf of Land that Land was not guilty of any negligence which caused or *250 contributed to the accident, and that the court was in error in refusing to grant him an instruction which would have permitted the jury to find Land guilty of contributory negligence. Under the state of the proof and the pleadings in this case Whitten was not entitled to an instruction that the jury could find Land guilty of contributory negligence. This is true because the contributory negligence charged by both Whitten and Williams was not substantiated by the proof. However, Whitten further argues that it was error for the court to instruct the jury that it could not find Land guilty of contributory negligence because of the existence of the comparative negligence statute. Mississippi Code Annotated sections 1454 & 1455 (1956). It is his contention that although Land was forced to stop momentarily because the vehicle in front of him stopped and the oncoming traffic prevented him from passing, that under the law it was his duty to drive from the highway on to the shoulder until such time as he could safely pass the vehicle in front of him. In other words, the question raised by Whitten is whether a person who is forced to momentarily stop in the paved portion of the highway because another vehicle has stopped in front of him and he is unable to pass because of oncoming traffic from the other direction, can be charged with negligence if he fails to drive his vehicle on to the shoulder of the highway. This raises a unique question, in fact, so unique that none of the cases that we have found deal with this narrow point. It is our opinion that Section 8215 should be construed in a practical manner and when it is so construed, it does not mean that a motorist cannot stop his vehicle momentarily, as was done here, without being in violation of the statute. To hold otherwise would mean that even though the exigencies of the traffic situation cause a motorist to stop momentarily on the highway, that in order to escape negligence he would have to immediately drive his vehicle on to the shoulder of the highway. However, Justices Brady, Smith and Robertson are of the opinion that it was error to grant the instruction. Furthermore, we are of the opinion that under the particular facts of this case that Whitten is not in a position to raise this question. His own proof shows that he saw Land's vehicle when he was 200 yards away and for some reason he failed to bring his vehicle to a stop without striking the vehicle in front of him. Under these circumstances insofar as Whitten is concerned, his negligence was a proximate cause of the accident.
The declaration also alleged that Land had been paid workmen's compensation, including medical expenses, by his employer and that his employer was entitled to be subrogated to any amount that he recovered up to the amount that it had expended. This allegation was admitted and no issue is involved as to this feature.
Williams, Wigley & Culp, and Whitten assign as error the granting of Instruction No. 6 on behalf of Land. This instruction instructed the jury that Land would be compelled to repay his employer all amounts that he had received under the provisions of the Workmen's Compensation Act. While this instruction contained a correct statement of the law, it was not a matter in this case for the jury to be concerned with. There was no issue relative to this feature and its only effect could be to invite the jury to inflate its award. This instruction should not have been given.
The other errors complained of in the record involved damages, and before discussing them, it is necessary to set out the facts relative to the nature and extent of Land's injuries.
Although Land was shaken up and dazed as a result of the accident, he did not think that he was seriously injured. On the second day after the accident his chest was sore and his neck started hurting. The pain continued and four or five days later he went to see Dr. Rubisoff who treated him for two or three months, giving him heat and ultrasonic treatments and prescribing medication for pain. During this *251 period the pain continued and Land was not able to work full time. About two months after the accident he began to have pain in his right hip and back. Dr. Rubisoff called in Dr. Manning, now deceased, who examined Land and sent him to a hospital where he was fitted for a corset-type back brace; he also prescribed a neck brace or collar. Land wore the back brace for sixteen months and wore the collar for about the same length of time when traveling. After he started wearing the back brace and collar, his condition grew worse instead of better. Dr. Manning continued to treat him until finally the pain grew so severe that Dr. Manning sent him to the hospital where he was placed in traction for eleven days, and this improved his condition for a period of about four months. Then his condition began to grow worse and he suffered pain in the lower part of the back, hip and down his right leg. He also continued to have pain in the neck across the base of his skull. Dr. Manning treated him until October 1963, at which time Dr. Manning was confined to the hospital and he referred Land to Dr. Bland Cannon, a neurosurgeon in Memphis, Tennessee. Dr. Cannon examined Land and told him that he was not going to get any better but would get progressively worse unless he had an operation. Land was hospitalized and Dr. Cannon operated on him on November 7, 1963, and removed a ruptured vertebral disc at the lumbosacral interspace. After the operation, Land stayed in the hospital for two weeks and then was allowed to go home where he was confined, unable to work, until January 1, 1964. During this time he continued to have pain, but his condition improved up to a point. He still has pain in his neck for which he has to take medication. About five months after the operation, he started having cramps in his right leg. These occur each night from one to five times. This makes it necessary for him to get out of bed and it takes a few minutes to work the cramp from his leg. In order for Land to perform his work he had to have a floating-type seat installed in his pickup truck. Mrs. Land testified on behalf of her husband and she corroborated his testimony relative to his condition after the accident. She also said that prior to the accident he was a healthy man, very calm, a good husband and a good father to their three children, but since the accident he has changed. He is irritable and cannot sit still for any length of time and that he has had to give up his Sunday School class because of his condition. He is unable to sit through church services and has given up his church work.
Dr. Cannon, in his deposition, related his findings as a result of his examination of Land and found an impairment of the neurological function of the lower right extremity consistent with nerve root damage. X-rays and other tests revealed a ruptured intervertebral disc at the lumbosacral interspace. The ruptured disc was removed by operation. He also found that the pain in Land's neck was compatible with the cervical spine sprain. While Land was hospitalized for the operation, this condition improved. After the operation Dr. Cannon continued to see Land periodically up until the time of the trial. On his last examination Dr. Cannon found that although Land still complained about pain to his neck, that he had full range of neck motion with a complaint of soreness in the extreme of the motion. He found the back motions were limited, being restricted about 25%. The tendon reflex at the knee and ankle is still absent. He found a slight weakness in the calf muscle of his right leg with a diminishing sensation over the side of the leg and foot. It was Dr. Cannon's opinion that since Land has impaired function in his right lower extremity and in the motion of his back, he would probably continue to have pain and as he grew older it could increase in severity. He said that the pain in the lower back and cramping of the leg is compatible with the nerve root damage that he found. It was the opinion of Dr. Cannon that Land had a permanent partial disability which he related to his lower back and leg.
*252 Williams, Wigley & Culp, and Whitten urged that the award of the jury even as reduced by the court was against the great weight of the evidence and so excessive as to evince bias, passion, and prejudice, and that the trial court was in error in not reducing the judgment by a larger amount. On the other hand, Land in his cross-appeal urges that the court erred in entering the remittitur in the amount of $23,000, and that the judgment for the full sum of $93,000 should be affirmed. We are of the opinion that the trial court was not in error in finding that the verdict of the jury in this case was so excessive as to evince bias, passion, and prejudice on the part of the jury. Having so found, it was his duty to evaluate the evidence and determine the amount of the remittitur. The trial judge was in a favorable position to so evaluate the testimony. He not only heard the witness testify, but he observed Land and was able to ascertain the extent of his injuries. We are sure that in considering the motion for a new trial the trial judge took into consideration the grounds set out in the motion. These included the error complained of relative to Instruction No. 6 and also the error complained of relative to the testimony of Land relative to his estimate of amount of commissions he lost during the years 1962, 1963, and 1964. After considering these things together with the evidence, he arrived at a remittitur in the amount of $23,000. While we think a judgment in this amount is large, we cannot say that the trial judge was in error in not reducing the judgment a greater amount. In the case of Rayner v. Lindsey, 243 Miss. 824, 138 So.2d 902 (1962), we reviewed the questions involved here and discussed fully the duties of the trial judge relative to a motion for a new trial. We held in that case that although in our opinion the trial judge would have been justified in requiring a much larger remittitur, we refused to reverse the case or grant a larger remittitur because we could not say that the trial court abused its discretion in not requiring a larger remittitur. While we are of the opinion in this case that the trial judge would have been justified in entering a larger remittitur, we have been unable to determine a sound basis for a larger remittitur, especially since the evidence in this case shows that Land was thirty-one years of age with a life expectancy of over forty years at the time he was injured. Taking into consideration that fact and the further fact that he will at least be permanently partially disabled for the balance of his life, we cannot justify any particular figure below the amount fixed by the circuit judge. It is true that the evidence shows that he is making more money now than he was at the time of the accident, but at the time of his injury he had only been working on this job for a few months. His salary was only $75.00 per week. The greater portion of his earnings came from his commissions selling farm equipment. The proof clearly shows that in performing his work he has undergone pain and inconvenience and that this will continue in the future.
For the reasons heretofore stated we find no merit in the cross appeal of Land and this case must be affirmed upon both direct and cross appeals. The judgment of $70,000 as entered by the trial court will be affirmed.
Affirmed on direct and cross appeals.
All Justices concur, except SMITH, J., who dissents.
GILLESPIE, Presiding Justice (concurring):
Insofar as the question of the excessiveness of the damages is concerned, I concur with some reluctance. In my opinion the judgment of the trial court, after entry of the remittitur, is still excessive. However, since the learned trial judge found the jury's verdict was so excessive as to evince prejudice and bias and sustained a motion for a new trial unless plaintiff entered a remittitur of $23,000.00, I am reluctant to say he erred in not ordering a larger remittitur.
JONES, BRADY and ROBERTSON, JJ., concur.
For dissenting opinion of SMITH, J., see 189 So.2d 791.