RUSSELL, J.,
dissenting:
¶ 23. I respectfully dissent because the trial court failed to make findings of fact and conclusions of law regarding the “speculative” nature of Dr. Stark’s testimony. Therefore, I would vacate the judgment of the trial court and remand the case for the trial court to make specific findings of fact and conclusions of law.
¶ 24. “The standard of review for the admission or exclusion of evidence, such as expert testimony, is an abuse of discretion.” Denham v. Holmes, 60 So.3d 773, 783-4 (¶ 34) (Miss.2011) (quoting Investor Res. Sens. v. Cato, 15 So.3d 412, 416 (¶ 2) (Miss.2009)). An appellate court will not overturn the decision of the trial court on an evidentiary issue unless the trial court abused its discretion, meaning that the decision was arbitrary and clearly erroneous. Worthy v. McNair, 37 So.3d 609, 614 (¶ 13) (Miss.2010).
¶ 25. In a medical-malpractice suit, the elements of the tort are: (1) the existence of a duty by the defendant to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) a failure to conform to the required standard; and (3) an injury to the plaintiff proximately caused by the breach of such duty by the defendant. Hubbard v. Wansley, 954 So.2d 951, 956-57 (¶ 12) (Miss.2007) (quoting Drummond v. Buckley, 627 So.2d 264, 268 (Miss.1993)). To establish these elements, expert testimony is required. Id. at 957 (¶ 12). “Not only must this expert identify and articulate the requisite standard that was not complied with, the expert must also establish that *1039 the failure was the proximate cause, or proximate contributing cause, of the alleged injuries.” Id. (quoting Barner v. Gorman, 605 So.2d 805, 809 (Miss.1992)). Without expert testimony supporting each element, a defendant is entitled to summary judgment. Hubbard, 954 So.2d at 957 (¶ 12).
¶26. Proximate cause is an essential element in an action for negligence, and there must be some reasonable connection between the act or omission of the defendant and the damage the plaintiff has suffered. Burnham v. Tabb, 508 So.2d 1072, 1074 (Miss.1987) (quoting W. Keeton, Prosser & Keeton on Torts § 41 (5th ed.1984)). The plaintiff has the burden of proof on the issue of causation. Id. “The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough.” Id.
¶ 27. In ruling in favor of Dr. May on the Daubert motion, the trial court cited Harris v. Shields, 568 So.2d 269, 274 (Miss.1990), and stated that a malpractice action requires evidence that in the absence of the alleged malpractice, a significantly better result would have been obtained. The trial court noted that Barrow had offered only one expert, Dr. Stark, on the issue of proximate cause. The court said that Dr. Stark had extensive qualifications. In fact, the court actually qualified him as an expert in the field of cardiology. However, the court found that Dr. Stark’s opinions, as they related to the proximate cause of Latisha’s death, were based mostly on speculation, but the court failed to provide a basis for this determination.
¶28. In this appeal, I do not believe this Court — in the absence of speculating — can perform its appellate responsibility of determining the correctness of the trial court’s judgment because the trial court has not given us detailed findings supporting its ruling. In its ruling, the trial court said that the testimony of Dr. Stark, who was the only witness on causation, “was based, in large part, on speculation.” However, the court did not cite any examples of the alleged speculative testimony, nor did the court explain why it was speculative.
¶ 29. The supreme court was faced with a similar lack of findings by a chancellor in 1987. “Before we may consider whether a trial court committed manifest error[,] it must tell us what it did. Similarly, before we may consider whether the record contains substantial evidence consistent with the trial court’s findings, we must know what those findings are.” Pace v. Owens, 511 So.2d 489, 491 (Miss.1987). Again, in 1987, the supreme court was faced with deciding an appeal without an opinion setting out findings of fact and conclusions of law. See Tricon Metals & Servs. v. Topp, 516 So.2d 236, 239 (Miss.1987). “We strive mightily to respect limitations upon our role where appeals are taken regarding issues of fact. The process breaks down, however, where the trial court sitting without a jury does not independently make findings of fact.” Id. The supreme court found the lack of findings to be an abuse of discretion and reversed and remanded to the trial court to make specific findings. Id.
¶ 30. In 2000, the supreme court, quoting Tricon, ruled:
[I]n cases of any complexity, tried upon the facts without a jury, the Court generally should find the facts specifically and state its conclusions of law thereon. Where a case is hotly contested and the facts greatly in dispute and where there is any complexity involved therein, failure to make findings of ultimate fact and *1040 conclusions of law will generally be regarded as an abuse of discretion.
Americrete, Inc. v. W. Ala. Lime Co., 758 So.2d 415, 418 (¶ 12) (Miss.2000) (internal quotations omitted). The court then vacated the judgment and the case was remanded for a ruling with findings of fact and conclusions of law. Id. at 419 (¶ 16).
¶ 81. Such findings arise from Rule 52 of the Mississippi Rules of Civil Procedure. In Fulop v. Suta, 847 So.2d 893, 895 (¶ 4) (Miss.Ct.App.2002) (citing Tricon, 516 So.2d at 288), this Court was faced with deciding a contracts case without any conclusions of law to support the trial court’s decision:
In Mississippi, courts sitting without juries are required to provide both a factual basis for their decisions in the form of concrete findings of fact and conclusions of law that are supported in toto by those findings of fact. M.R.C.P. 52(a). Failure to provide this Court with findings of fact and conclusions of law precludes us from performing our appellate duties.
¶ 32. In this case, we are asked to determine if Dr. Stark’s testimony was speculative without the benefit of knowing what testimony the trial court found speculative. The Court is left to guess whether the trial court found all of Dr. Stark’s testimony speculative. And, if so, why? If not all, but only some, of the testimony was speculative, then which parts of the testimony on causation were speculative and why?
¶ 33. The majority provides a rationale to support the trial court’s decision regarding the speculative nature of Dr. Stark’s testimony. In my view, the majority’s rationale is clearly speculative since the trial court failed to provide such a basis in its decision. See Pace, 511 So.2d at 491 (holding that “before we may consider whether the record contains substantial evidence consistent with the trial court’s findings, we must know what those findings are”).
¶ 34. The majority also places great emphasis on the fact that Latisha was alive at the end of the surgery, but gives no consideration to the fact that her condition had declined. It is undisputed that Latisha was a very ill patient with congestive heart disease. The evidence clearly shows that Latisha presented for surgery and was feeling a little weak. At the conclusion of the procedure, the record reflects that she was very weak. A few of Dr. Stark’s findings in his report are as follows:
To a reasonable degree of medical certainty, the oral surgery procedure, the stress of surgery, and the surge of adre-nergic activity post-surgery precipitated acute cardiac failure or arrhythmia in this extremely high-risk patient resulting in death. This is known to occur when an acute stress sets off a temporary overload of the heart in a patient who has chronic heart failure — “when there is an excessive increase in heart rate because the nervous reflexes of the heart overreact.” Guyton & Hall, Textbook of Medical Physiology [240-41 10th ed.]. It fell below the standard of care to perform this elective surgery at a time when Ms. Barrow was clearly showing signs of congestive heart failure (dysp-nea, rapid respirations, and fluid edema in the ankles and feet). Clinically, the finding of progressive edema is one indication of decompensated heart failure .... It also fell below the standard of care to perform this elective procedure in an outpatient setting in the absence of any blood pressure, heart rate, or respiratory monitoring.... Following Mrs. Barrow’s oral surgery, she was extremely weak and became unresponsive. “After she was given ammonia, she came around and was responding.” *1041 She had to be taken out of the office by wheelchair, and placed in her mother’s car. Nausea, dizziness and vomiting post-procedure certainly necessitated urgent assessment of these parameters, but this was not done. Dr. May should have realized that a pre-transplant heart patient with clear signs of congestive heart failure would be more safely managed in an inpatient setting for these dental extractions.... These opinions are to a reasonable degree of medical certainty.
Based on Dr. Stark’s opinions, the actions or inactions of Dr. May were the proximate cause to move her into the “lethal vicious cycle,” and without any intervention, resulted in her death. Additionally, Dr. Ogle provided testimony that Dr. May breached the standard of care. In spite of the majority placing some emphasis on Latisha’s meeting with the heart-transplant patient earlier that day and being afraid of a heart transplant, when she presented to Dr. May, her vital signs were normal for her.
¶ 35. During the process, it was disputed between Dr. May and his staff whether Latisha’s blood pressure, heart rate, or respiration rate was monitored during the procedure. It is undisputed that upon receiving the anesthesia, Latisha indicated that she felt ill. There was no indication that Dr. May took any measures to determine why she became ill after the anesthesia was administered. Latisha also presented other signs that should have raised concern by Dr. May. She was administered ammonia by Dr. May’s staff because she was feeling very weak at the conclusion of the dental procedure. Clearly, something was not normal. An hour into the drive home, her mother called with concerns regarding her status. When she got home, she went to bed. The record does not reveal any other intervening causes, and she ended up dying that night — within 6 hours of the surgery. As noted by our supreme court, “[t]he question is, did the facts constitute a succession of events so linked together as to make a natural whole, or was there some new and independent cause intervening between the alleged wrong and the injury?” Miss. City Lines, Inc. v. Bullock, 194 Miss. 630, 13 So.2d 34, 36 (1943); see also Eckman v. Moore, 876 So.2d 975 (Miss.2004). In this case, there was no new independent cause. Rather, this was a situation of a succession of events leading to a natural whole.
¶ 36. The majority also states that Latisha’s fear of the surgery and her conversation with another heart-transplant patient contributed to her death. But what happened to her during and after surgery resulted in her death. In addressing the issue of proximate cause, Dr. Stark discussed the lethal vicious cycle, which is an accepted phenomenon in the medical community. It was the failure to monitor Latisha during the surgery and to take into consideration her conditions immediately following surgery that placed her in that lethal vicious cycle. Dr. Stark noted that this cycle will result in a patient’s death unless there is intervention. Instead of intervening, Dr. May just put Latisha in the car and sent her home. Nothing was done. They just sent her home, where the vicious cycle continued until her death because there was no intervention. And I note that she was not in this lethal vicious cycle prior to surgery, because her baseline levels were normal, so there was no need for concern at that point. Thus, it was not the anticipation of the surgery that led to her death. Rather, it was the failure to monitor her during the surgery and the failure to intervene after the surgery that resulted in her death.
¶ 37. This dissent is not to say that Barrow would have gotten a jury verdict, and it is not to say that the trial court’s *1042 decision was totally wrong. Rather, this dissent is to say that the trial court failed to provide the basis for its conclusion that the testimony was speculative. The trial court’s order stated that “most” of Dr. Stark’s opinions were speculative. But, if only one opinion was acceptable as to the cause of death, a directed verdict should not have been granted. It is my opinion that Dr. Stark gave enough testimony of the facts at hand to allow this case to go forward, to allow rebuttal expert testimony, and to allow the jury to decide the case.
¶ 38. This is a hotly contested, complex dental-malpractice case involving expert testimony, where the facts vary greatly. I would find that this case should be considered under Americrete. I would further find that the trial court abused its discretion when it failed to make findings of fact and conclusions of law, which would allow this Court to make a determination on the alleged errors. Therefore, I would vacate the decision of the trial court and remand the case for the trial court to make specific findings of fact and conclusions of law.
IRVING, P.J., JOINS THIS OPINION.