203 So.2d 299 (1967)
Herbert SAUCIER
v.
B.F. WALKER and B.F. Walker, Inc., et al.
No. 44447.
Supreme Court of Mississippi.
October 9, 1967.
Suggestion of Error Overruled November 6, 1967.
*300 William E. Andrews, Jr., Purvis, for appellant.
Simrall, Aultman & Pope, Hattiesburg, for appellees.
ROBERTSON, Justice:
The Appellant, Herbert Saucier, has appealed from a $5,000 judgment entered in his favor by the Circuit Court of Lamar County, Mississippi, against Appellees, B.F. Walker, B.F. Walker, Inc., Raymond G. Brakefield and Charles Wade Phillips. No verdict was returned by the jury against Appellees, Henry Williams *301 and H.D. Campbell, consequently no judgment was entered by the court against them. Appellees, B.F. Walker and B.F. Walker, Inc., cross-appealed.
The appellant assigned as error the following:
1. The gross inadequacy of the verdict and judgment, indicating that the jury wholly disregarded all of the clear and credible evidence, ignored the instructions of the court, and evinced bias, passion and prejudice against the appellant;
2. The form of the verdict is improper and not in accord with the laws made and provided;
3. The jury failed to return a verdict against Appellees, H.D. Campbell and Henry Williams;
4. The court erred in giving an instruction for Appellees, Williams and Walker, after the appellant had opened his argument to the jury.
The principal contention of the Cross-Appellants, B.F. Walker and B.F. Walker, Inc., is that the trial court erred in overruling their motions for a peremptory instruction.
The accident occurred at about 10:30 p.m. on the rainy and misty night of January 22, 1965, on U.S. Highway 11 about five miles south of Lumberton, Mississippi, and about one-fourth of a mile north of the highway bridge over Wolf River. Henry Williams, driving a 1956 White tractor and pulling a tandem trailer float loaded with heavy steel tubing, left the warehouse of B.F. Walker, Inc. in Harvey, Louisiana, just before dark on the evening of January 22, 1965, enroute to Magee, Mississippi, where he was to deliver his cargo. He had driven similar equipment for eight years and had made this particular trip before.
He testified that the fuel tank held "80-something gallons," and that to his personal knowledge the tank was full when he left Harvey, Louisiana. His tractor had functioned perfectly until he proceeded uphill in a northerly direction on U.S. Highway 11 after crossing the Wolf River bridge. He described his suddenly developed trouble in this way:
"As I started up this grade it started missing on me like it was catching air in the line. I didn't know what was wrong with it. I came to a dead stop and I figured then I was out of fuel and when it stopped and wouldn't start again I was going to let it roll off of the highway off on the shoulder and that is when the trailer slid off in the ditch."
When the trailer jackknifed and slid against the embankment, this caused the tractor to extend in a northwesterly direction across most of the east half of the highway. The west half and two or three feet of the east half were clear and unobstructed. Williams immediately set out fuses and reflectors, placing two reflectors south of the tractor and one north. He borrowed more fuses from a passing truck and set them out.
After about forty-five minutes, Appellee H.D. Campbell came along, and Williams asked him to get him some diesel fuel. Campbell went to Lumberton, obtained five gallons of fuel and accompanied by Appellant Saucier, returned to the disabled tractor of Williams. He parked his 1964 Ford Sedan on the east shoulder of the highway with about two feet of his car on the pavement. He parked about 30 yards south of the disabled tractor leaving his headlights on dim, and with a red and white rotating flasher light on top of his car.
Williams put the five gallons of diesel fuel in the tractor and tried unsuccessfully to start it. In the meantime, a highway patrolman had arrived on the scene and had parked his patrol car about 30 yards north of the disabled tractor with his lights on, and also, a red and white flashing light on top of the patrol car. Highway Patrolman Robinson with his flashlight, *302 then took up a position opposite the tractor to direct oncoming traffic around it. Appellant Saucier, at the suggestion of Patrolman Robinson, returned to Campbell's car and got in out of the rain, sitting on the front seat of the car.
Charles Wade Phillips, driving a 1964 Chevrolet owned by Raymond G. Brakefield, crossed the bridge over Wolf River, rounded the curve and proceeded up the inclined highway at a speed estimated at between 60 and 90 miles per hour. He hit Campbell's parked car head-on and greatly injured Appellant Saucier and Campbell, who at the time, was preparing to enter his car on the driver's side.
A wrecker arrived soon thereafter and pulled the tractor-trailer from the ditch and on over the crest of the hill toward Lumberton. The tractor finally started as it was being pulled down the hill, and thereafter proceeded under its own power to Lumberton. Driver Williams there had his fuel tank filled and signed for 76 7/10 gallons, which included the five gallons of fuel brought to him by Campbell.
With these facts before it, the jury returned the following verdict:

 "WE, the JURY, find for the PLAINTIFF against the
 following DEFENDANTS:
 B.F. WALKER & B.F. WALKER, INC. $5,000.00
 RAYMOND G. BRAKEFIELD $5,000.00
 CHARLES WADE PHILLIPS $5,000.00"

The jury returned no verdict against Henry Williams, the driver of the tractor-trailer, or H.D. Campbell, the owner of the 1964 Ford Sedan in which Appellant Saucier was sitting at the time he was injured.
Appellant Saucier sustained bruises and abrasions of the neck and head, fractured ribs, laceration of the right elbow, a severe sprain of his neck and cervical spine and lower lumbar region. The humerus, the bone between the elbow and the shoulder, of his right arm was fractured. Dr. Francis R. Conn, an orthopedic surgeon, performed an operation on February 3, 1965, using the open reduction method, and inserted two steel pins on the inside of the bone. After the bone had knitted, Dr. Conn, on June 11, 1965, operated again, this time removing the pins.
Saucier was 56 years old at the time of the accident, and was earning $240 per month as night marshal of the Town of Lumberton. He went back to work at his old job of night marshal on July 1, 1965, after being incapacitated for over five months. He incurred medical and hospital expenses of $1,287.80. Dr. Conn testified that Saucier will continue to have a 20 to 25 per cent overall limitation of his right arm.
The jury possibly intended to return a $15,000 verdict in favor of the appellant, but the form of their verdict is such that they have actually returned a verdict totalling $5,000 against three joint tort-feasors.
As was stated in the Appellant's Brief, the law of Mississippi has been settled for a long time that in actions based on joint negligence of several tort-feasors, a separate verdict against each defendant cannot be rendered; there must be one verdict rendered against all defendants whom the jury finds liable. Now a jury can determine which defendants are liable and which are not, as they did in this case. It was proper for them to leave out Henry Williams and H.D. Campbell, but in actions based on joint negligence there can be but one verdict and that must be in one amount and against all the joint tort-feasors *303 found liable. Sections 1549 and 1550, Mississippi Code of 1942, Annotated. As was said in Southland Broadcasting Co. et al v. Tracy, 210 Miss. 836, 50 So.2d 572 (1951),
"It is the settled law of this state that there can be no apportionment of damages against joint tort-feasors; * * *." 210 Miss. at 850, 50 So.2d at 577.
See also Universal C.I.T. Credit Corp. v. Turner, 56 So.2d 800 (Miss. 1952); Mississippi Cent. R.R. v. Roberts, 173 Miss. 487, 160 So. 604 (1935); Gillespie v. Olive Branch Building & Lumber Co., 174 Miss. 154, 164 So. 42 (1935).
The form of the verdict in this case is ambiguous, confusing and improper, and the attorney for the appellant should have requested that the jury be returned to the jury room to reword their verdict and to bring in a verdict in the proper form. In the absence of a request from the appellant's attorney that this be done, the trial judge on his own motion, should have ordered the jury to return to the jury room to reform and reword their verdict and to bring in a verdict in proper form. In fact this Court placed this responsibility and duty squarely on the shoulders of the trial judge when it said in Universal C.I.T. Credit Corp. v. Turner, supra,
"The trial court was under the duty to see that loss of time and the expense of the trial should not be nullified by the failure of the jury to put their verdict in proper form." 56 So.2d at 803.
There is no question that a $5,000 verdict is completely and totally inadequate, and in no wise compensates the appellant for his very serious and permanent injuries, his pain and suffering, his extended stays in the hospital and his special damages of $1,287.80.
We feel that the judgment should be affirmed as to liability of Charles Wade Phillips and Raymond G. Brakefield, but reversed and remanded for a new trial on the issue of damages only because the damages awarded are completely and totally inadequate, and the form of the verdict, as to the amount of damages, is confusing, improper and illegal.
The most serious question and the one that has caused us most concern was raised in the cross-appeal, wherein it was stated that:
"The trial court was in error in overruling the motions of B.F. Walker and B.F. Walker, Inc. for peremptory findings which said motions were made when the plaintiff, Appellant, rested, and again when all parties rested, and which said motions for peremptory finding should have been sustained by the trial court, as a matter of law."
Cross-appellants contend that no negligence was shown on the part of Henry Williams, the driver of the tractor-trailer owned by Walker, and that even if there were negligence, that the sole proximate cause of the collision between Brakefield's automobile and Campbell's parked and well-lighted car was the independent and intervening negligence of Charles Wade Phillips, the driver of the Brakefield car. On the other hand, the cross-appellee contends that the driver of the tractor-trailer, Henry Williams, was negligent in that he did not check his fuel gauge enroute and that it took 76 7/10 gallons to fill the tank at Lumberton.
The testimony is uncontradicted that the fuel tank of cross-appellants' tractor was filled to capacity at Harvey, Louisiana, that this fuel was sufficient to take it to its destination at Magee, Mississippi, and part of the way back to Harvey. It was running perfectly and had given no indication of trouble until the driver started up the long hill north of Wolf River. The engine began to miss just as if it were giving out of fuel. Williams attempted to nurse it along until he reached the top of the hill, but the motor finally stopped and he was unable to start it again. The night was rainy and the highway wet. In an attempt to get both the tractor and trailer off the highway, Williams let the tractor-trailer roll backwards, *304 but instead of staying on the shoulder the trailer jackknifed and came to rest up against an embankment. The tractor was blocking all except three feet of the east half of the highway. The driver again attempted to start the engine, but to no avail, so it was impossible to move the tractor or trailer.
We are not called upon to decide whether the driver, Henry Williams, was initially negligent, because cross-appellants further contend that, even admitting for the sake of argument that they were negligent in not checking the fuel gauge to determine whether the tractor was low on fuel, that the gross negligence of Phillips, the driver, and Brakefield, the owner of the crashing car, was the sole proximate cause of the collision, and that this negligence constituted an intervening and entirely independent cause of the collision.
There is still another reason that could be urged by cross-appellants as to why they are not liable to Cross-Appellee Saucier. Assuming that Williams was negligent in allowing his vehicle to run out of fuel thereby causing its disability on the highway, that negligence was not the proximate cause of Saucier's injury. As between Saucier and Cross-Appellants Williams, B.F. Walker and B.F. Walker, Inc., Saucier was not placed in a position of peril by said cross-appellants. Saucier got into the Campbell automobile of his own accord and he knew the danger of sitting in a parked automobile on a highway just as well as the cross-appellants, who were no more responsible for Saucier's injuries than they would be if Saucier had decided to stand in the northbound traffic lane. While stopping a vehicle on an interstate highway can be a deadly menace to others using the highway, in this instance the choice was Saucier's as to whether he would remain in the parked automobile or whether he would go where it was completely safe. The choice being entirely up to Saucier, Williams' negligence, if any, was not the proximate cause of Saucier's injuries.
Now as between Saucier and Phillips and Brakefield, it is an entirely different matter. The automobile of H.D. Campbell was facing south down the hill with its headlights on and with a warning flasher light, alternating red and white, rotating on top of the car. Phillips, with a clear and unobstructed view for at least a quarter of a mile, proceeded up the incline of the highway at a speed variously estimated at 60 to 90 miles an hour, and ran head-on into Campbell's automobile without reducing the speed of his automobile or attempting in any way to go around Campbell's car. There was no physical contact whatsoever between the automobile driven by Phillips and the disabled tractor. Phillip's automobile hit Campbell's automobile only. Physical contact is not necessary in every case to impose liability, but under the peculiar facts of this case it does go to show a completely new and independent intervening negligence on the part of Phillips.
This Court has consistently held since 1882 that where there is an independent, intervening cause which is the sole proximate cause of the accident, the negligence, if any, of the first actor is remote and non-actionable. See Marqueze et al. v. Sontheimer, 59 Miss. 430 (1882); Louisville & N. Railroad Co. v. Daniels, 135 Miss. 33, 99 So. 434, 34 A.L.R. 516 (1924); Ozen v. Sperier et al., 150 Miss. 458, 117 So. 117 (1928), and Bufkin v. Louisville & N. Railroad Co., 161 Miss. 594, 137 So. 517 (1931).
One of the best reasoned cases on this point is the case of Mississippi City Lines, Inc. v. Bullock et al., 194 Miss. 630, 13 So.2d 34, 145 A.L.R. 1199 (1943). In that case, Justice Griffith speaking for the Court said:
"Although it was proved, as stated, that the position in which the bus stood was violative of Section 90, Chap. 200, *305 Laws 1938, as construed in the recent case, Teche Lines, Inc., v. Danforth, [195] Miss., [226,] 12 So.2d 784, not yet reported [in State report], we are of the opinion that this was not the proximate cause of the injury, and we shall reach and dispose of the other contentions during the further course of this opinion.
"Although one may be negligent, yet if another, acting independently and voluntarily, puts in motion another and intervening cause which efficiently thence leads in unbroken sequence to the injury, the latter is the proximate cause and the original negligence is relegated to the position of a remote and, therefore, a non-actionable cause. Negligence which merely furnishes the condition or occasion upon which injuries are received, but does not put in motion the agency by or through which the injuries are inflicted, is not the proximate cause thereof." 194 Miss. at 639, 13 So.2d at 36.
"* * *."
"It follows that the appellant bus company was entitled to the peremptory charge which was requested by it, and that a judgment to that effect must be rendered here. There having been no appeal by the woman who was driving the automobile which struck the boy, the judgment against her stands as rendered by the trial court." 194 Miss. at 646, 13 So.2d at 39.
We adhered to the same rule in the later cases of Stewart v. Kroger Grocery, etc., Co., 198 Miss. 371, 21 So.2d 912 (1945); E.I. DuPont de Nemours & Co. v. Ladner, 221 Miss. 378, 73 So.2d 249 (1954), and Permenter v. Milner Chevrolet Co., 229 Miss. 385, 91 So.2d 243 (1956).
We are of the opinion that a peremptory instruction should have been granted B.F. Walker and B.F. Walker, Inc. In view of this conclusion, it is unnecessary to consider the other errors assigned by the cross-appellants.
Judgment affirmed as to liability, but reversed and remanded for a new trial as to damages, against Charles Wade Phillips and Raymond G. Brakefield. Judgment reversed and judgment here for B.F. Walker and B.F. Walker, Inc.
GILLESPIE, P.J., and RODGERS, PATTERSON and INZER, JJ., concur.