369 So.2d 1381 (1979)
MISSISSIPPI POWER COMPANY and State Farm Fire & Casualty Company
v.
Robert L. JONES.
No. 50793.
Supreme Court of Mississippi.
March 28, 1979.
Rehearing Denied May 16, 1979.
*1382 Williams, Glover & Walton, David Williams, Meridian, for appellant.
Sandusky & Bailey, David Stephenson, Lawrence W. Rabb, Eppes & Shannon, J.R. Shannon, Meridian, for appellees.
EN BANC.
SUGG, Justice, for the Court:
This case involves an appeal by Mississippi Power Company from a judgment in favor of Robert L. Jones against it for $5,000 actual damages and $15,000 punitive damages. State Farm Fire & Casualty Company cross-appealed from the judgment which limited its subrogation rights to the actual damages assessed by the jury, contending it is entitled to share in the award of punitive damages as a compensation carrier which had paid Workmen's Compensation benefits to Jones.
Jones commenced a third party action against MPC under section 71-3-71 Mississippi Code Annotated (1972). Jones charged in his declaration that MPC was guilty of reckless, willful, wanton and unlawful acts constituting negligence which proximately and directly resulted in the injuries suffered by him. He predicated his case on three theories of negligence; (1) the breach by MPC of its common law duty to utilize the high standard of care commensurate with the dangerous and hazardous nature of electricity, (2) the willful violation of an ordinance of the City of Meridian which prohibited energizing an electrical system until after the city electrical engineer had made a final inspection of the system and issued his written certificate of approval, and (3) MPC did not notify Jones' employer that it had energized the electrical *1383 system in the fourth section of the Peavey building.
Jones was employed by Chester Chatham, an electrical contractor who was under contract with Peavey Electronics, Inc. to install electric wiring in a building owned by Peavey. Peavey was in the process of constructing a new building which was divided into four sections. Three sections consisted of new construction and the fourth section was an existing structure which was to be renovated.
MPC installed a large electrical transformer on Peavey's property which remained the property of MPC. Electric current was to be transmitted to all four sections of the Peavey building through the transformer. Chatham installed the wiring between the MPC transformer and the Peavey building. Each section of the building was energized as the electrical work in that section was completed with MPC making the necessary connection at its transformer.
Before August 15, 1974, the city electrical inspector had approved the connection of electrical service to three sections of the building and those sections had been energized. On Thursday, August 15, 1974 as the wiring of the fourth section was nearing completion, Chatham requested MPC to disconnect the temporary electric service that had been serving the fourth section of the building during the renovation. Chatham also requested the city electrical inspector to make his inspection of the fourth section. The electrical inspector came to the premises on August 15, presumably to make an inspection of the fourth section; however, the inspector was not called as a witness to show that he completed his inspection and authorized energizing the electrical system in the fourth section. The only proof offered by MPC relating to its authorization to energize the system was by George East, Jr., Division Engineer for MPC. East testified that a memorandum of telephone calls was kept by Robert Davis, a staff assistant of MPC, who was not called as a witness. The memo contained the following entry: "M-26 Peavy's O.K. City 11:00."
When the memo was offered for identification only, plaintiff's attorney objected on the grounds that MPC was trying to show a custom and that the memo had not been furnished in response to a request for a production of documents.
The court questioned the witness East and after determining that Davis made the entries on the memo, overruled the objection.
Plaintiff's attorney questioned East about the memo and elicited from the witness the fact that the memo was the sole authorization MPC obtained before it energized the system. The witness was then asked to give his interpretation of the portion of the memo quoted above. The witness answered:
The city electrical engineer called Mr. Davis and told him  or his office called Mr. Davis and told him it was okay to energize that particular service.
When the memo which had been previously offered for identification was later offered in evidence, plaintiff did not object. Although the above evidence that MPC had received oral approval from the city electrical engineer to energize the electrical system is rather weak, in view of the fact that the explanation of the memo was brought out by the plaintiff himself and no objection was made to the introduction of the memo, we conclude that the evidence is sufficient to show that MPC obtained oral approval to energize the system.
Following the telephone call on August 15, indicated in the memo, MPC energized the system sometime during the afternoon of August 16, but did not notify Chatham that it had energized the system.
Chatham testified that, on Friday afternoon, August 16, 1974, Jones was working on the switch box which had been installed. The switch box had been grounded but the cables to the box had not been secured. After Jones left work Chatham pulled the cables through the conduit and attempted to push some of the wires a little further up into the box. Chatham then placed a lock on the box to prevent theft of the copper wire. He did not remember the exact time but stated that it was dusk dark when he *1384 locked the switch box. Chatham also testified that it would not have been safe for him to push the wire into the box if the system had been energized because it would have caused conductors to come in contact with the ground, thus damaging some of the equipment. Chatham returned Monday morning about 7:30 and gave the key to the lock on the switch box to Billy Joe Boyette who, in turn, gave it to Jones. Chatham did not know that the electrical system had been energized.
The following questions and answers are Chatham's version of what happened when Jones unlocked the box.
A. He removed the lock from the box, the box being so designed it cannot be opened without  the door cannot be opened without the switch being in an open position. He reached up and took hold of the switch to open the switch. And in so doing, one of the conductors, maybe one or more, fell against the box. There was a violent reaction of arcing. The box began to burn as if it were being burned with a torch of some sort. The door to the box was never opened. It remained closed and there was some splattering of molten metal.
Q. Molten metal was splattered?
A. Yes, sir.
Q. Did you notice whether any got on Mr. Jones' glasses?
A. It did.
Q. What happened to Mr. Jones after that? Did it make a loud noise?
A. Indeed, it did.
Q. And what happened to Mr. Jones?
A. Mr. Jones, of course, was startled and he jumped backwards and he tripped, and he fell and struck his elbow on the floor.
Ronnie Poythress testified that he was employed by Peavey and during the late afternoon of August 16, 1974, saw a MPC truck with an arm and a bucket come to the pole where the transformer was located. He did not report what he had seen to anyone. On Monday morning, August 19, the witness became aware that something had happened to the electrical system because when he was in the west section of the building he saw sparks coming from the girders and shortly thereafter the electricians working in the building came down the aisle exiting the building.
Jones was carried to a hospital, but never lost consciousness. About 9:00 a.m. he told Chatham he felt all right but the elbow on which he fell hurt a little. He was kept in the hospital for observation and released the next day. He returned to work on Wednesday and continued to perform the same type work he was doing before the accident. Jones testified he developed a chronic neck condition which required him to give up his job as a union electrician which required travel. He obtained employment with a non-union electrical contractor so he could remain at home in order to use traction at night and be assigned work which would accommodate his neck condition.

PART I

WAS THE NEGLIGENCE OF MPC A PROXIMATE CAUSE OF JONES' INJURY?
An ordinance of the City of Meridian setting the standard of minimum requirements for electrical installations provides in part:
No current of electricity shall be turned on to any wiring system until after the electrical inspector shall have made final inspection of all wiring and fixtures and shall have issued his written certificate of approval.
MPC concedes that a written permit was not issued by the city's electrical inspector authorizing it to energize the system. However, it argues that because it had oral approval of the city electrical inspector to energize the system, failure to obtain a written certificate was, at most, a technical violation of the ordinance, and, in any event, was not the proximate cause of any injury to the plaintiff.
We do not agree. At the time MPC energized the electrical system, the installation of the electrical system was not complete. When it energized the system before it was complete, the act of energizing the system was the sole and proximate cause of *1385 the injury to Jones; therefore, we hold that the negligence of MPC proximately caused the injury to Jones and supports an award for damages.

PART II

WAS AN AWARD OF PUNITIVE DAMAGES WARRANTED BY THE EVIDENCE?
MPC argues that even if it was guilty of negligence, the evidence does not justify an award of punitive damages.
We have numerous cases setting forth the requirements for awarding punitive damages annotated in Mississippi Digest Damages, key number 91(3). Our cases generally hold that punitive damages are recoverable in negligence cases only when the negligence is so gross that reckless or wanton disregard of safety of others is indicated. Maupin v. Dennis, 252 Miss. 496, 175 So.2d 130 (1965); Belk v. Rosamond, 213 Miss. 633, 57 So.2d 461 (1952); Teche Lines, Inc. v. Pope, 175 Miss. 393, 166 So. 539 (1936).
We agree with the argument of MPC that punitive damages may be recovered only where the negligence is so gross as to indicate reckless or wanton disregard for the safety of others, and that an unlawful act within itself is not ground for an award of punitive damages. However, distributors of electricity are required to observe a very high degree of care in distribution of the dangerous agency of electricity. In Mississippi Power & Light Co. v. Shepard, 285 So.2d 725 (Miss. 1973) we stated:
The degree of diligence which a distributor of electricity must observe in the distribution of the dangerous agency of electricity is a very high degree of care. When human life is at stake due care under the prevailing circumstances requires that everything that gives reasonable promise of preserving life must be done regardless of difficulty or expense. Moreover, the degree of care increases as the danger increases. (285 So.2d at 729).
The evidence is without dispute that MPC energized the electrical system in the building with the oral approval rather than the written approval of the inspector as required by the ordinance of the City of Meridian. The purpose of requiring a written certificate from the city electrical engineer was to prevent injuries such as the one sustained by Jones. The ordinance was designed to eliminate, so far as humanly possible, the possibility of misunderstanding information conveyed orally rather than in writing. MPC energized the system without securing written approval, thus evidencing a reckless and wanton disregard for the safety of any person who might have been working on the system.
MPC also argues that it had been the practice for a long period of time to obtain oral approval from the city electrical inspector and its failure to pick up a written certificate before turning on the electricity was a technicality which did not constitute misconduct so flagrant as to transcend mere carelessness. In effect, MPC is arguing that this procedure had been followed for such a length of time that it amounted to a business practice. Violation of city ordinances or other laws, although often repeated, does not give rise to a business practice which will insulate one from failure to abide by the ordinance. Violations are not excused because regulations have not been enforced or because particular regulations have been generally disregarded or because, in the opinion of the experts, the requirement is unwise, or because the prescribed protection offered by the regulation would be lacking in efficiency or is unnecessary.

PART III

WAS MPC ENTITLED TO A JUDGMENT BASED ON THE FIRST VERDICT OF THE JURY?
MPC also argues that the trial court was in error because it did not accept the first verdict of the jury and enter judgment accordingly, but gave the jury an additional instruction, received the second verdict, and entered judgment based on the second verdict.
The jury returned the following verdict:
We, the jury, find for the plaintiff, Robert L. Jones, and assess damages in the sum of $-0- actual damages and $15,000.00 *1386 punitive damages, against Mississippi Power Company.
Over the objection of MPC the judge granted an additional instruction as follows:
This court instructs the jury that before you can find that plaintiff is entitled to punitive damages you must find that plaintiff would be entitled to some actual damages. Punitive damages may only be awarded in addition to actual damages.
The instruction given by the trial court was proper because punitive damages predicated on actual damages are not recoverable if no actual damages are allowed. Allen v. Ritter, 235 So.2d 253 (Miss. 1970); McCain v. Cochran, 153 Miss. 237, 120 So. 823 (1929).
Two instructions pertaining to damages were granted but neither instruction expressly covers the point of law included in the instruction given by the court on its own initiative. The jury was returned to the jury room for further deliberation after which it returned the following verdict:
We the jury, find for the plaintiff, Robert L. Jones, and assess damages in the sum of $5,000.00 actual damages, and $15,000.00 punitive damages, against the Mississippi Power Company.
Section 11-7-161 Mississippi Code Annotated (1972) provides:
If the verdict is not responsive to the issue submitted to the jury, the court shall call their attention thereto and send them back for further deliberation.
In Saucier v. Walker, 203 So.2d 299 (Miss. 1967) the jury returned a verdict in a suit based on the negligence of several joint tort-feasors as follows:

 WE, the JURY, find for the PLAINTIFF against the
 following DEFENDANTS:
 B.F. WALKER & B.F. WALKER,
 INC. $5,000.00
 RAYMOND G. BRAKEFIELD $5,000.00
 CHARLES WADE PHILLIPS $5,000.00
 (203 So.2d at 302)

We held in Saucier that the trial judge should have, on his own motion, ordered the jury to return and bring in a verdict in the proper form. In Saucier, we stated:
The form of the verdict in this case is ambiguous, confusing and improper, and the attorney for the appellant should have requested that the jury be returned to the jury room to reword their verdict and to bring in a verdict in the proper form. In the absence of a request from the appellant's attorney that this be done, the trial judge on his own motion, should have ordered the jury to return to the jury room to reform and reword their verdict and to bring in a verdict in proper form. In fact this Court placed this responsibility and duty squarely on the shoulders of the trial judge when it said in Universal C.I.T. Credit Corp. v. Turner, supra,

"The trial court was under the duty to see that loss of time and the expense of the trial should not be nullified by the failure of the jury to put their verdict in proper form." 56 So.2d [800] at 803. (203 So.2d at 303).
In Newell v. State, 308 So.2d 71 (Miss. 1975) we held that a trial judge may initiate and give appropriate written instructions in addition to those requested by the litigants. In Newell v. State, 308 So.2d 68 (Miss. 1975) we also held that the court could initiate and give appropriate written instructions to a jury after it had retired to consider its verdict in response to a question from the jury.
The first verdict rendered by the jury found for the plaintiff but did not assess any amount for actual damages. This was a finding that MPC was negligent. When the jury assessed punitive damages in its first verdict, this was a finding that MPC was guilty of negligence that indicated a reckless or wanton disregard for the safety of Jones.
Under our rule that punitive damages may not be awarded unless actual damages are awarded, the first verdict was ambiguous, confusing and improper. After the trial judge supplied the deficiency in the original instructions, the jury retired to consider its verdict further, and returned a verdict in the proper form. We hold: (1) MPC was not entitled to a judgment in its favor on the verdict of the jury, and (2) it *1387 was not error for the trial court to initiate and give the additional instruction under the facts of this case.

PART IV

WAS THE COMPENSATION CARRIER ENTITLED TO SHARE IN THE AWARD FOR PUNITIVE DAMAGES?
The final judgment limited repayment to State Farm of Workmen's Compensation benefits paid by it to the actual damages awarded to Jones. It denied State Farm repayment out of the amount awarded for punitive damages.
Our statute[1] provides for repayment to an insurer of the amount paid as compensation and medical expenses in the following language:
The acceptance of compensation benefits from or the making of a claim for compensation against an employer or insurer for the injury or death of an employee shall not affect the right of the employee or his dependents to sue any other party at law for such injury or death, but the employer or his insurer shall be entitled to reasonable notice and opportunity to join in any such action or may intervene therein. If such employer or insurer join in such action, they shall be entitled to repayment of the amount paid by them as compensation and medical expenses from the net proceeds of such action (after deducting the reasonable costs of collection) as hereinafter provided.
The commencement of an action by an employee or his dependents (or legal representative) against a third party for damages by reason of the injury, or the adjustment of any such claim, shall not affect the right of the injured employee or his dependents (or legal representative) to recover compensation, but any amount recovered by the injured employee or his dependents (or legal representative) from a third party shall be applied as follows: reasonable costs of collection as approved and allowed by the court in which such action is pending, or by the commission of this state in case of settlement without suit, shall be deducted; the remainder, or so much thereof as is necessary, shall be used to discharge the legal liability of the employer or insurer; and any excess shall belong to the injured employee or his dependents. The employee or his dependents bringing suit against the third party must notify the employer or carrier within fifteen days of the filing of such suit. (Emphasis Supplied).
The question presented on cross-appeal has not been considered by this Court and no cases on the question from other jurisdictions have been cited.
Jones correctly states that punitive damages are not awarded to compensate a party for an injury, but are granted in the nature of punishment for the wrong doing of the defendant as an example so that others may be deterred from the commission of similar offenses, thereby, in theory, protecting the public. Standard Life Insurance Company of Indiana v. Veal, 354 So.2d 239 (Miss. 1978); Snowden v. Osborne, 269 So.2d 858 (Miss. 1972); Fowler Butane Gas Company v. Varner, 244 Miss. 130, 141 So.2d 226 (1962); Neal v. Newburger Company, 154 Miss. 691, 123 So. 861 (1929); Hines v. Imperial Naval Store Company, 101 Miss. 802, 58 So. 650 (1911).
He then argues that an insurer is not entitled to repayment of compensation benefits paid by it from punitive damages because punitive damages are not awarded as compensation for an injury. We are not persuaded by this argument because the statute specifically provides that the insurer is entitled to repayment "from the net proceeds of such action," and "any amount recovered by the injured employee or his dependents" shall be applied, (1) to reasonable costs of collection, (2) to reimburse the employer or carrier, and (3) any excess to the injured employee or his dependents. The statute is plain and unambiguous, and we hold the term "net proceeds" is broad enough to include any punitive damages that might be awarded. Also, the provisions directing distribution of "any amount *1388 recovered" clearly includes punitive damages.
We construed section 71-3-71 in Litton Systems, Inc. v. Murphree, 301 So.2d 850 (Miss. 1974) and held that the statute means "exactly what it says; that is, that the employer and insurer are entitled to recover compensation paid." Litton was a wrongful death action brought by the heirs of the deceased which was settled for $125,000. It was argued that Litton should not recover the $500 funeral expenses paid by it under the Workmen's Compensation Act because the heirs could not recover funeral expenses from a third party under our wrongful death statute.[2]
Popular words in statutes must be accepted in their popular sense and the Court must attempt to glean from the statutes the legislative intent. Dennis v. Travelers Insurance Co., 234 So.2d 624 (Miss. 1970); Mississippi State Tax Commission v. Hinton, 218 So.2d 740 (Miss. 1969). Where the language used by the legislature in a statute is plain and unambiguous and conveys a clear and definite meaning there is no occasion to resort to rules of statutory interpretation. Forman v. Carter, 269 So.2d 865 (Miss. 1972); State v. Heard, 246 Miss. 774, 151 So.2d 417 (1963).
Section 71-3-71 Mississippi Code Annotated (1972) is a part of the Workmen's Compensation Act, and one of the purposes of the Act is to insure payment to an injured employee for industrial accidents regardless of the negligence of the employer.
The Act is a departure from the common law because it precludes a common law tort action by an employee against his employer, and substitutes a no-fault compensation system to replace the common law tort action of an employee against his employer.
An employee injured in an industrial accident caused by the negligence of a third party, his employer, or his employer's compensation carrier may file suit against the third party. If there is recovery in such suit, the employer or compensation carrier who has paid compensation benefits is entitled to recover the amount paid as compensation benefits. If an employee were permitted to collect compensation benefits in addition to the amount recovered in a suit against a third party, the employee would thereby receive double recovery as to the compensation benefits collected from his employer or the carrier. Section 71-3-71 precludes double recovery by the injured employee by providing reimbursement to the employer or carrier for compensation benefits paid the injured employee.
Following the analogy of Litton, in which we permitted repayment of funeral benefits to a self insured employer out of a settlement with the deceased's heirs, which settlement did not include funeral expenses, by construing the words, "net proceeds" in the statute as all inclusive, it logically follows that punitive damages would also be recoverable under the same statute.
If the legislature had intended to exclude punitive damages as a source for repayment of compensation benefits paid by an insurer, it could have engrafted this exception on the statute. It did not engraft the exception, therefore, we decline.
All justices concur in Parts I and III of this opinion. Justice Walker has filed a dissenting opinion as to Part II and is joined in his dissent by Presiding Justices Smith and Robertson. Justice Bowling and Justice Lee filed dissenting opinions as to Part IV and are joined in their dissent by Chief Justice Patterson.
The majority of the justices having concurred in each of the parts of this opinion, the judgment of the trial court is affirmed in part, reversed in part and remanded for entry of a judgment in accordance with this opinion.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED FOR ENTRY OF JUDGMENT IN ACCORDANCE WITH THIS OPINION.
*1389 All Justices concur in Parts I and III.
SMITH and ROBERTSON, P. JJ., and WALKER, J., dissent as to Part II.
PATTERSON, C.J., LEE and BOWLING, JJ., dissent as to Part IV.
BOWLING, Justice, dissenting:
I dissent from the decision under Part IV of the majority opinion.
The interpretation of the language and legislative intent regarding Mississippi Code Annotated section 71-3-71 (1972), as set out in the majority opinion, in my humble opinion, is not correct. On the other hand, I think that the language of the statute clearly prohibits the workmen's compensation carrier from being subrogated to an award of punitive damages against the third party.
It appears that there are no authorities one way or the other on this question from any jurisdiction. I am of the idea that this is for the reason that no other state legislative body has been talked into passing such an obviously prejudiced statute and one that has no justice by its terms. It is almost unbelievable to me that in 1948 our legislature was carried away to the extent of including this statute with some of its provisions in the workmen's compensation act.
Even with the statute in question giving the carrier a free ride in collecting what it had received premiums to pay, the language of the statute appears clear that the legislature did not intend the subrogation right to include a claim on the punitive damage part of a judgment against a third party. The statute states in part:
The acceptance of compensation benefits from or the making of a claim for compensation against an employer or insurer for the injury or death of an employee shall not affect the right of the employee or his dependents to sue any other party at law for such injury or death, but the employer or his insurer shall be entitled to reasonable notice and opportunity to join in any such action or may intervene therein. If such employer or insurer join in such action, they shall be entitled to repayment of the amount paid by them as compensation and medical expenses from the net proceeds of such action (after deducting the reasonable costs of collection) as hereinafter provided.
The commencement of an action by an employee or his dependents (or legal representative) against a third party for damages by reason of the injury, or the adjustment of any claim, shall not affect the right of the injured employee or his dependents (or legal representative) to recover compensation, ... . (Emphasis ours)
As stated in the majority opinion, the reason for and the circumstances under which a jury may return a verdict against a defendant for punitive damages are clear. No one can argue that such a verdict amounts to "damages" received by the injured plaintiff. The punitive damage award is solely in the nature of punishment for a wrong done and it just so happens that the money for that punishment does not go to the state, a church, an orphanage, or any other charitable entity, but is paid to the other party in the controversy.
As hereinbefore stated, there are no cases from any jurisdiction on this question. The majority opinion attempts to base its decision on Litton Systems, Inc. v. Murphree, 301 So.2d 850 (Miss. 1974). A reading of that opinion clearly shows that it has no application here. The recovery of the controversial funeral expenses by the plaintiff (injured employee) clearly was "damages" sued for in the claim "for the injury or death of an employee" as provided for by the statute. Cases are further cited regarding the right of the compensation carrier to receive in subrogation the amount received by the injured person for pain and suffering, against a third party, when there is no provision in the compensation law to pay for those elements. The distinction again in those cases is that the injured person's claim against the third party "for the injury" included a claim for compensatory pain and suffering damages and according to the statute is "damages" by reason of the injury as above quoted.
*1390 I further point out that in accord with the decisions of this Court in tort actions, including the claim for injury or death brought by the employee or his representative against a third party, the lower courts instruct juries to bring back separate verdicts  one for compensatory damages (including pain and suffering), and a separate verdict for punitive damages, which by no stretch of the imagination could be called "damages" to the injured employee or the representative of a deceased employee.
With all respect, I cannot see any justification, legally or otherwise, for permitting the compensation carrier to be subrogated to funds received by the injured employee or the representative of a deceased employee that have nothing whosoever to do with the payments made by the compensation carrier under its contractual obligation executed for specific premiums under specific coverages.
PATTERSON, C.J., joins in this dissent.
WALKER, Justice, dissenting:
I feel constrained to dissent from the holding of the majority in Part II of the opinion upholding the award of $15,000 punitive damages.
It is an elementary principle of law that punitive damages may be recovered only when the negligence complained of is so gross as to indicate a reckless or wanton disregard for the safety of others and that the violation of a municipal ordinance alone, absent other circumstances, is not grounds for an award of punitive damages. Furthermore, the fact that distributors of electricity are required to observe a very high degree of care in its distribution does not per se warrant the imposition of punitive damages because of some negligent act of the Power Company.
In the case sub judice, the sole ground of negligence relied upon by appellee was the failure of the Power Company to obtain written approval of the city inspector as required by the ordinance of the City of Meridian before energizing the electrical system to the Peavey building. Oral approval to energize the building was obtained as had been the practice for many years. I would agree without hesitation that if the Power Company had failed to obtain any approval to energize the Peavy electric system that it would have been guilty of reckless and wanton disregard for the safety of others who might be working on the system. However, I am unable to understand the majority's reasoning or to fathom its logic in reaching the conclusion that failure to obtain written approval as opposed to oral approval constituted such gross negligence as to evince a reckless or wanton disregard for the safety of others.
Punitive damages are not favored in the law and should not be allowed except in the rarest of cases. The rule laid down by the majority in Part II of the Court's opinion to the effect that obtaining oral approval from the City to energize a building's electrical lines instead of written approval amounts to such gross or wanton negligence and a disregard for the safety of others as to warrant the allowance of punitive damages is so unrealistic that it will not withstand the test of time.
SMITH and ROBERTSON, P. JJ., join this dissent.
LEE, Justice, dissenting in part:
I do not think the compensation carrier is entitled to reimbursement out of punitive damages received, and I dissent as to Part IV of the majority opinion. Mississippi Code Annotated Section 71-3-71 (1972) provides: "... shall not affect the right of an employee or his dependents to sue any other party at law for such injury or death. ... If such employer or insurer join in such action, they shall be entitled to repayment of the amount paid by them as compensation and medical expenses from *1391 the net proceeds of such action. ..." (Emphasis added)
It is apparent that the legislature, in providing reimbursement to the employer-carrier for compensation and medical expenses paid, was referring to actual damages and not punitive damages. Net proceeds of such action refers to the suit for injury or death (actual damages). Likewise, any amount recovered by the injured employee relates to the suit for injury or death (actual damages). If the legislature had intended to include punitive damages for reimbursement to the employer-carrier, it could have done so by simply providing that reimbursement be made from all actual and punitive damages obtained in such action. It did not do so, and I would not include it (punitive damages) for reimbursement.
NOTES
[1] Section 71-3-71 Mississippi Code Annotated (1972).
[2] This argument was apparently based on our holding in Thornton v. Insurance Co. of North America, 287 So.2d 262 (Miss. 1973) where we held that heirs could not recover for funeral expenses in a wrongful death action because a claim for funeral expenses would be an asset of the estate of the decedent recoverable only in a suit by the personal representative of the decedent.