## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CC-01660-SCT

*MISSISSIPPI EMPLOYMENT SECURITY COMMISSION*

*v.*

*DONNY E. JONES*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/1/2001 |
| TRIAL JUDGE: | HON. ROBERT G. EVANS |
| COURT FROM WHICH APPEALED: | JASPER COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ALBERT B. WHITE |
| ATTORNEY FOR APPELLEE: | R. K. HOUSTON |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | REVERSED AND RENDERED -09/12/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/3/2002 |

**BEFORE SMITH, P.J., WALLER AND CARLSON, JJ.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1. The Mississippi Employment Security Commission ("MESC") appeals an order of the Circuit Court of the Second Judicial District of Jasper County, Mississippi, reversing the decision of the MESC finding Donny E. Jones ineligible to receive unemployment benefits for failing to report income received as a part-time alderman. We reverse the judgment of the circuit court, finding error as a matter of law, in the circuit court's conclusion that part-time service as an alderman does not constitute "employment" and remuneration to the alderman does not constitute "wages."

## FACTS AND PROCEDURAL HISTORY

¶2. Jones was employed by Hol-Mac Corp. from March 27, 1983, through January 11, 2000, when he was terminated. Jones filed a claim for unemployment benefits with the MESC on January 12, 2000. He received benefits from January 15, 2000, through June 3, 2000, of $190 per week. During this time, Jones filed weekly claims forms indicating that he had no earnings during the previous week, thus making him eligible for benefits of $190 per week. Jones received approximately $3,800 in unemployment insurance benefits for the period at issue.

¶3. Through routine cross checks, the MESC learned that Jones was receiving money from the City of Bay

Springs as a member of the Board of Aldermen while also receiving unemployment compensation. On June 8, 2000, the MESC requested information from the City Clerk of Bay Springs as to Jones's earnings during the relevant time frame, and found that Jones had gross earnings during this period in the amount of $396.92, bi-weekly.

¶4. On June 15, 2000, the MESC wrote Jones about this information. Jones admitted that he left off these earnings on his weekly claims forms, stating that he was told these amounts earned were not required to be reported, or at least that was his understanding.

¶5. The MESC prepared a Non-Monetary Report of Investigation which resulted in three Notices of Determination being issued. These provided that Jones had earnings during the weekly periods set out, such that he was disqualified from receiving further benefits, and such that he had been overpaid in the total amount of $3,800 during the relevant time period. The MESC concluded that Jones's conduct was fraudulent, thereby disqualifying him from the statutory $40 exemption for earnings before benefits would be subject to reduction from earnings. Miss. Code Ann. § 71-5-505 (2000).

¶6. Jones appealed to the MESC's Appeals Referee. Both Jones and the City of Bay Springs were given notice that a telephonic hearing would be held on September 11, 2000. The City Clerk for the City of Bay Springs testified. However, Jones failed to participate. The referee found that Jones was an elected alderman for the City of Bay Springs; that he had bi-weekly earnings of $396.92; that he had total earnings of $4,167.66 through the weeks ending January 15, 2000, through June 3, 2000; that he failed to report these earnings on his weekly claims forms; and that he was overpaid unemployment insurance benefits in the amount of $3,800.

¶7. Jones then appealed to the MESC Board of Review which adopted the fact findings and opinion of the referee. Jones then appealed to the Jasper County Circuit Court. The circuit court reversed the decision of the MESC finding that part-time service as an alderman of the City of Bay Springs did not constitute "employment" and the pay Jones received as a City of Bay Springs alderman was not remuneration, or "wages" under the Employment Security Act and, thus, not deductible from the applicable unemployment benefits. The MESC then appealed to this Court.

## STANDARD OF REVIEW

¶8. The law in Mississippi is well settled that judicial review of a Board of Review's ruling is limited. ***Booth v. Miss. Employment Sec. Comm'n***, 588 So. 2d 422, 424 (Miss. 1991) (collecting citations). Miss. Code Ann. § 71-5-531 (2000) provides "[i]n any judicial proceedings under this section, the findings of the Board of Review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law...." This Court's scope of review in an unemployment compensation case is limited to the findings of the Board of Review, and an order by the Board on the facts is conclusive if supported by substantial evidence; hence, judicial review is limited to questions of law. ***Coleman v. Miss. Employment Sec. Comm'n***, 662 So. 2d 626, 627 (Miss. 1995). Accordingly, this Court will review the record to determine whether, as a matter of law, the Board's fact-finding is supported by substantial evidence. If the evidence is sufficient and no legal error is found, this Court will affirm the decision of the Board.

## DISCUSSION

**I. DID THE CIRCUIT COURT ERR BY FINDING THAT JONES DID NOT EARN WAGES AS A CITY OF BAY SPRINGS ALDERMAN WHICH WOULD BE DEDUCTIBLE FROM HIS UNEMPLOYMENT BENEFITS?**

A. WHETHER JONES RECEIVED WAGES

¶9. The critical issue in this case is whether Jones received "wages"as defined by Miss. Code Ann. § 71-5-11 (Supp. 2002) during the time that he received unemployment benefits. "Wages" is broadly defined and includes all payments made for personal services, in cash or in kind.

> 'Wages' means all remuneration for personal services, including commissions and bonuses and the cash value of all remuneration in any medium other than cash, except that 'wages,' for purposes of determining employer's coverage and payment of contributions for agricultural and domestic service means cash remuneration only. The reasonable cash value of remuneration in any medium other than cash shall be estimated and determined in accordance with the rules prescribed by the commission. . . .

Miss. Code Ann. § 71-5-11P(1).

¶10. Jones argues that the primary issue before the Court is the proper interpretation of Miss. Code Ann. § 71-5-11P(1). Specifically, that the definition of wages implies employment and that the "clear meaning of the clause 'remuneration for personal services' is 'remuneration *for personal services from employment*.'" He argues that the relationship of an elected official with his constituency is not one of employment. Therefore, he contends that the payment that Jones received in his capacity as an elected official was exempt and should not have been considered by the MESC in calculating the benefit to which he was entitled pursuant to Miss Code Ann. § 71-5-505.

¶11. The MESC argues that "the gravamen of this case is whether Claimant (Jones) earned wages as defined by the Employment Security Act during the same time that he also drew benefits, not whether 'the relationship of an elected official with his constituency is . . . one of employment.'" It contends that the "real issue" is the appropriate application of Miss Code Ann. § 71-5-11(1) and § 71-5-505 which does not identify employment as a "prerequisite to deducting monies earned by a claimant, during any week in which he or she also receives benefits."

¶12. It is well settled that when a court considers a statute passed by the Legislature, the first question before the court is whether the statute is ambiguous. *Miss. Power Co. v. Jones,* 369 So. 2d 1381, 1388 (Miss. 1979). If the statute is not ambiguous, the court should interpret and apply the statute according to its plain meaning without the aid of principles of statutory construction. *Id.* Whether the statute is ambiguous or not, the ultimate goal of this Court in interpreting a statute is to discern and give effect to legislative intent. *Anderson v. Lambert*, 494 So. 2d 370, 372 (Miss. 1986).

¶13. "Wages" is defined as "*all* remuneration for personal services, including commissions and bonuses and the cash value of all remuneration in *any* medium."Miss Code Ann. § 71-5-11P(1) (emphasis added). We agree that "wages" as defined by Miss Code Ann. § 71-5-11P(1) neither mentions nor implies employment as a prerequisite to deducting monies earned by a person during any week in which they receive benefits. The definition of wages under the applicable statute is broad enough to encompass earnings paid for being an elected official. This assumption is further strengthened by the fact that the Legislature made specific

exemptions from the definition of wages, including jury duty, inactive duty training for a member of a reserve [military] component and "payments made to, or on behalf of, retirement, sickness, medical expenses, etc." Miss. Code Ann. § 71-5-505(1). Nowhere in the applicable statute is earnings paid to an elected official excluded.

¶14. Citing *Mississippi Employment Sec. Comm'n v. Medlin*, 171 So. 2d 496 (Miss. 1965), Jones argues that the term "wages" has been judicially declared to mean wages *from employment*. *Medlin* involved a wage earner who voluntarily left his employment to become self-employed and sought benefits when his self-employment venture failed. *Id.* at 497. We held that "remuneration 'for personal services' referred to in section 7379 is meant to be the equivalent of 'wages.' In other words, a consideration paid by an employer to an employee for services rendered by the employee to employer." *Id.* at 499. *Medlin* is distinguishable from the case sub judice in that *Medlin* dealt with a claimant's attempt to requalify for benefits under Miss. Code Ann. § 71-5-513(A)(1)(b). *Medlin* was limited to requiring individuals to re-establish themselves in the labor market in order to bring themselves back into a class of persons intended to be protected by the Unemployment Compensation Act. *Id.* at 499-500. Thus, the facts are distinguished from the case sub judice.

¶15. As a matter of law, the circuit court erred in reversing the decision of the MESC. The circuit court did not elaborate on its reasons for reversing the Board's decision other than to say that Jones's service as an alderman did not constitute "employment" as contemplated by the Mississippi Employment Security Law and that the remuneration received was not "wages" as contemplated by the Act. We disagree. The Board's fact-finding is easily supported by substantial evidence. Jones has admitted receiving benefits totaling $3,800 while at the same time receiving $396.92 bi-weekly compensation as an alderman of the City of Bay Springs, Mississippi. For the reasons stated above, the bi-weekly payments constitute "wages" under Miss Code Ann. § 71-5-11P(1).

   B. BECAUSE THIS COURT HOLDS THAT JONES RECEIVED WAGES, HOW WILL
   THOSE WAGES BE TREATED UNDER MISS. CODE ANN. § 71-5-505?

¶16. Miss Code Ann. § 71-5-505(1) provides that claimants are entitled to the weekly benefit amount, less wages paid in excess of forty dollars a week.

   [E]ach eligible individual who is totally unemployed or part totally unemployed in any week *shall be paid with respect to such week a benefit in an amount equal to his weekly benefit amount less that part of his wages, if any, payable to him with respect to such week which is in excess of Forty Dollars ($40.00). . . .* Provided, however, that remuneration for 'inactive duty training' or 'unit training assembly' payable to such eligible individual who is a member of any of the reserve components, or remuneration for jury duty pursuant to a lawfully issued summons therefor payable to such eligible individual, shall not be considered wages which serve to reduce the otherwise payable benefit amount.

*Id.* (emphasis added).

¶17. Since Jones earned "wages" during the applicable time, those wages should have been deducted from the benefits he received. By offsetting Jones's benefits with wages he received over $40 a week under Miss. Code Ann. § 71-5-505, it is apparent Jones's benefits would be considerably less than the $190 per week that he received.

## II. DID THE MESC CORRECTLY CALCULATE THE OVERPAYMENT TO JONES?

¶18. Before the MESC will be entitled to recover any overpayment in accordance with Miss. Code Ann. § 71-5-19(4), there must be findings by the MESC that "a person received benefits, at a time when he was ineligible, by reason of a non-disclosure or a misrepresentation of a material fact, made by that person or another, irrespective of fraudulent intent or knowledge of the omitted or misrepresented fact." ***Miss. Employment Sec. Comm'n v. Sellers***, 505 So. 2d 281, 283 (Miss. 1987). Any person who satisfies these elements shall "in the discretion of the commission, either be liable to have such sum deducted from any future benefits payable to him under this chapter or shall be liable to repay to the commission for the unemployment compensation fund a sum equal to the amount so received by him...." Miss. Code Ann. § 71-5-19(4).

¶19. MESC is entitled to recover what it overpaid to Jones under Miss. Code Ann. § 71-5-19(4). Substantial evidence exists that Jones received benefits. He was ineligible for the amount that he received. He did not disclose his additional income as a city alderman. The non-disclosure was personally made by Jones on his weekly claims forms and, according to Miss. Code Ann. § 71-5-19(4), it does not matter whether Jones's intent was fraudulent.

¶20. Jones argues that by requiring that the benefits be repaid, the MESC has imposed the more severe of the two penalties under Miss. Code Ann. § 71-5-19(4). Apparently, Jones thinks that the MESC should have instead deducted such benefits from amounts that he was to receive in the future. Therefore, for lack of some rational and objective finding on the record, that decision was arbitrary and capricious and cannot stand.

¶21. The MESC states that:

> Generally, the Commission's policy is that where the overpayment was due to the fault of the claimant, i.e., some culpable action of non-disclosure, fraud, or misrepresentation, the Commission is entitled to full repayment of any benefits paid, such that Mr. Jones'[s] $3,800.00 overpayment is correct.

> In the instant case, since Mr. Jones did not testify, and since the overpayment was due to Mr. Jones'[s] reporting failure, the Commission set-up Mr. Jones'[s] file as a case of fraud. Because this matter was found by the Commission to be fraud, the Commission did not give Mr. Jones the $40.00 exemption. [Miss. Code Ann. §] 71-5-505 (1972, as amended).

¶22. The MESC's decision to seek full repayment was, in our opinion, arbitrary and capricious. Although Miss. Code Ann. § 71-5-19(4) clearly gives the MESC the right to seek full repayment and our holding in *Sellers* does not require any fraudulent intent in order to do so, we conclude that Jones should be afforded the $40.00 per week exemption permitted under Miss. Code Ann. § 71-5-505. Jones's case should not have been set up as a fraud case and having done so was, in our opinion, arbitrary. The policy used by the MESC to seek full repayment is apparently a self-imposed one which it uses when, and if, there is some 'fault of the claimant, i.e., some culpable action of non-disclosure, fraud, or misrepresentation." Its decision was based on Jones's failure to disclose an extra $198.46 per week on his weekly claims forms which was compounded by his failure to testify before the MESC's Appeals Referee. We do not share the MESC's position that Jones's failure to testify amounted to fraud. Though Miss. Code Ann. § 71-5-141 states that "[n]o person shall be excused from attending or testifying[,]" we will not allow a presumption of fraudulent intent when an employee fails to participate. The MESC was completely justified in seeking to collect

immediately the benefits paid although it should be less the $627.20 in exemptions.

## CONCLUSION

¶23. The circuit court erred when it reversed the MESC. The record reveals substantial evidence to support the Board's fact-finding except to the extent discussed above. Jones's remuneration received as a city alderman is wages as contemplated under the Employment Security Act. Accordingly, the circuit court's judgment is reversed, the amount of reimbursement ordered by the MESC is reversed, and we render judgment that the MESC is entitled to a reimbursement of $3,172.80 that it overpaid to Jones.

¶24. **REVERSED AND RENDERED.**

**PITTMAN, C.J., SMITH, P.J., COBB, EASLEY, CARLSON AND GRAVES, JJ., CONCUR. DIAZ, J., CONCURS IN RESULT ONLY. McRAE, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**