CHANDLER, J„
for the Court.
¶ 1. The Mississippi Employment Security Commission (MESC) denied McNeil’s application for unemployment benefits. He appealed the denial to the Circuit Court of Harrison County, which affirmed the MESC’s decision. He appeals to this Court, asserting three errors: (1) whether the appeals referee’s finding that he violated his employer’s attendance policy was supported by substantial evidence; (2) whether as a matter of law occasional and isolated incidents of tardiness and absence constitute misconduct; and (3) whether as a matter of law the circuit court failed to give judicial effect to an administrative regulation adopted by the MESC. Finding no error, we affirm.
FACTS
¶ 2. Stanley McNeil worked as a laborer for Taber Extrusions from July 6, 2000 to December 12, 2001, when he was dismissed for excessive absenteeism. Taber had a “no fault” attendance policy. This policy provided that any absence or tardiness resulted in points being charged to an employee according to a sliding scale, with missing less than half the scheduled hours resulting in one half of a point, missing over half the scheduled hours resulting in three fourths of a point, and a full day absence resulting in one point. Under this policy, there were no “excused” absences for medical or any other reason; however, absences qualified under the Family and Medical Leave Act were not charged any points. The policy further provided that an employee’s point accumulation for an absence or lateness would double if the employee failed to call to report the outage thirty minutes before the beginning of the employee’s shift.
¶ 3. McNeil was dismissed after being assessed twelve and a half points for absenteeism within a rolling twelve month period. McNeil’s attendance record indicates that, from July 20, 2001, until his termination, he was assessed five points for five absences and six points for three no-call absences. After returning from each absence, McNeil signed a pink card acknowledging the absence. When McNeil accumulated over four points, he received a written warning that he would be suspended if he accumulated eight points. When McNeil accumulated over eight points, he was suspended for three days, and received a written warning that he would be terminated if he accumulated twelve points. On December 4, 2001, McNeil incurred one and a half points when he missed over half of his scheduled hours and failed to call at least thirty minutes before the start of his shift. Because this occurrence pushed his total point accumulation to twelve and a half, McNeil was terminated.
¶ 4. The claims examiner denied McNeil’s claim for unemployment benefits, and McNeil appealed. After an administrative hearing, the appeals referee denied unemployment benefits on the ground that McNeil was discharged due to misconduct. On appeal, the MESC’s Board of Review adopted the findings of fact and opinion of the appeals referee, and the circuit court affirmed the Board’s order.
*224 STANDARD OF REVIEW
¶ 5. Appellate review of the MESC’s Board of Review is limited to questions of law. Miss.Code Ann. § 71-5-531 (Rev.2000). We will affirm the Board’s findings of fact if such findings are supported by substantial evidence. Mississippi Employment Security Commission v. Jones, 826 So.2d 77, 79(¶ 8) (Miss.2002).
LAW AND ANALYSIS
I. WHETHER THE FINDING THAT MCNEIL VIOLATED THE ATTENDANCE POLICY WAS SUPPORTED BY SUBSTANTIAL EVIDENCE.
¶ 6. An employee’s failure to follow his employer’s policy may constitute misconduct and disqualify him from receiving unemployment benefits. Captain v. Mississippi Employment Security Commission, 817 So.2d 634(¶ 18) (Miss.Ct.App.2002). However, the employer bears the burden of proof in showing misconduct by clear and convincing evidence. Trading Post, Inc. v. Nunnery, 731 So.2d 1198, 1202(¶ 15) (Miss.1999).
¶ 7. Before the MESC, McNeil made two challenges to the evidence showing that he had accumulated twelve and a half points under the attendance policy. Both challenges were premised upon McNeil’s contention that Taber failed to carry the burden of proof that his conduct rose to the level of misconduct as defined in the attendance policy. Firstly, McNeil asserted that, on two occasions, he complied with the literal language of the attendance policy by contacting Taber within one half hour of the beginning of his scheduled shift and notifying Taber that he was unable to work. The following phrase is the policy language in question: “[e]mployees are required to contact the company by calling ... within 30 minutes prior to the start of their scheduled shift for any absence or tardiness.”
¶ 8. McNeil asserted that the literal application of this policy only required the call to be made anytime within the thirty minutes prior to the beginning of the shift. We agree that the policy itself may have been incorrectly phrased, when taken to its literal extreme. However, Taber’s human resources manager, Debbie Gaughf, testified that, operationally, the policy required the employee to call in no later than thirty minutes prior to his shift. McNeil admitted during his testimony that he understood that employees were required to call at least thirty minutes prior to the beginning of the shift. Therefore, McNeil’s assertion that the attendance policy was literally construed was contradicted by substantial evidence concerning the actual operation and understanding of the attendance policy.
. ¶ 9. Secondly, McNeil asserted that several of his absences were excusable under the Family and Medical Leave Act (FMLA). 29 U.S.C.A. § 2612 (1993). Ta-ber’s undisputed practice was to refrain from assessing points for any employee absence covered by FMLA. Gaughf testified that Taber’s practices included telling new employees that FMLA could apply to excuse absences from the attendance policy, and that notices concerning FMLA were posted at the work site. Gaughf also testified that Taber’s procedure was that, when an employee returned from an absence or was tardy in reporting to work, the employee was required to tell his supervisor the reason for the absence or tardiness. The supervisor then completed a form reporting the occurrence and the stated reason. The supervisor sent this report to human relations, where a determination was made as to whether FMLA applied. McNeil contended that prior to his termination he did not know FMLA *225 applied to the Taber attendance policy, and that at least one absence should have been covered and excused. On appeal, McNeil contends that this testimony was unrebutted, and that, because he should not have been assessed more than twelve points under the attendance policy, the MESC decision is not supported by substantial evidence. While it may be true that one or more of McNeil’s absences could have been excused, there is evidence showing that Taber advised McNeil of what he needed to do to bring such excuses to his supervisor’s attention, and that McNeil failed to comply with that policy.
¶ 10. "Where substantial evidence supports a finding that an employee showed a continuing disregard for the policies of his employer, a finding of misconduct will be affirmed. Yarbrough v. Mississippi Employment Security Commission, 841 So.2d 1193(116) (Miss.Ct.App.2003). In this case, the evidence supports a finding that McNeil failed to comply with Taber’s attendance policy and its policy regarding FMLA. Therefore, this assertion of error is without merit.
II. WHETHER AS A MATTER OF LAW ISOLATED INCIDENTS OF TARDINESS OR ABSENCE CONSTITUTE MISCONDUCT AS REFERRED TO IN MISSISSIPPI CODE ANNOTATED SECTION 71-5-513 (SUPP.2003).
¶ 11. McNeil argues that his absenteeism cannot be considered misconduct as a matter of law. Mississippi Code Annotated section 71 — 5—513(A)(1)(b) provides that an employee terminated for misconduct connected with work is ineligible for unemployment benefits. The supreme court has defined the term “misconduct” as referred to in the statute as:
conduct evincing such willful and wanton disregard of the employer’s interest as is found in deliberate violations or disregard of the standards of behavior which the employer has the right to expect from his employees. Also, carelessness and negligence of such degree, or recurrence thereof, as to manifest culpability, wrongful intent or evil design, and showing an intentional or substantial disregard of the employer’s interest or of the employee’s duties and obligations to his employer ... mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, or inadvertences and ordinary negligence in isolated incidents, and good faith errors' in judgment or discretion [are] not considered “misconduct” within the meaning of the statute.
Wheeler v. Arriola, 408 So.2d 1381, 1383 (Miss.1982) (citing Boynton Cab Co. v. Neubeck, 237 Wis. 249, 296 N.W. 636, 640 (1941)).
¶ 12. McNeil argues that the MESC failed to conduct any inquiry into whether McNeil’s actions constituted misconduct as defined by Wheeler, and found McNeil guilty of misconduct solely because he violated the employer’s attendance policy. McNeil correctly argues that an employee’s violation of an employer’s policy does not automatically constitute misconduct. Rather, an employee’s conduct must manifest willful and wanton disregard of the employer’s interest, as stated in Wheeler. Mississippi Employment Security Commission v. Jones, 755 So.2d 1259, 1262 (¶¶ 10-11) (Miss.Ct.App.2000).
¶ 13. Our review of the opinion of the appeals referee that was adopted by the Board reveals that the appeals referee applied Wheeler to the facts of this case. After reciting the standard from Wheeler, the appeals referee found that the facts demonstrated that McNeil willfully violated Taber’s right to expect its employees to be at work on time and to give adequate *226 notice of absences. The referee found that this evidence demonstrated misconduct.
¶ 14. We now turn to whether McNeil’s conduct could constitute misconduct as a matter of law. McNeil testified that the December 4 tardy that resulted in his termination was attributable to his arrest. He testified that he was arrested on December 4 and was unable to appear for his 3:00 p.m. shift until 7:15 p.m. He testified that his son called Taber to say he was sick. Gaughf testified that Taber received the call less than thirty minutes before the beginning of McNeil’s shift. McNeil supplemented the record to show that he was later found not guilty. McNeil argues that his absence due to an arrest was not intentional and, therefore, the absence could not support a finding of misconduct.
¶ 15. Excessive or unexcused absence from work may constitute misconduct and preclude unemployment benefits. Barnett v. Mississippi Employment Security Commission, 583 So.2d 193,196 (Miss.1991); Mississippi Employment Security Commission v. Martin, 568 So.2d 725, 726 (Miss.1990); BL Development Corp. v. Brantley, 795 So.2d 611(¶ 8) (Miss.Ct.App. 2001). In Barnett, the employer warned Barnett about excessive absences after Barnett was absent from work on fifteen occasions in four months. Barnett, 583 So.2d at 195. The next month, a storm caused a tree to fall on Barnett’s house and Barnett stayed home to arrange repair. Id. Barnett failed to notify the employer that he would be absent, despite his knowledge of the employer’s policy requiring an employee to call before 7:00 a.m. if he was not going to come to work. Id. Barnett also failed to communicate his excuse for the absence to his employer upon his return to work. Id. Barnett was terminated and the MESC denied unemployment benefits because he had been discharged for misconduct connected with work. Id. at 194. The supreme court found that, as a matter of law, Barnett’s actions could constitute misconduct because, after being warned, Barnett unreasonably failed to notify the employer that he would be absent. Id. at 196.
¶ 16. We find that McNeil’s actions could constitute misconduct as a matter of law. McNeil exhibited a pattern of absenteeism without proper notification to the employer. On two occasions, McNeil was absent without calling Taber at least thirty minutes before he was supposed to be at work. McNeil testified that he knew and expected that points would be assessed to him for absences, and that he knew that Taber expected him to report absences at least thirty minutes prior to the start of his shift. Taber warned McNeil and later suspended him for his absenteeism. This shows that McNeil was on notice of Ta-ber’s disapproval of his absenteeism. On December' 4, McNeil again failed to give Taber adequate notice that he would be four hours late for work due to the arrest. We observe that McNeil’s record of prior absenteeism was wholly unconnected with the arrest. We find that McNeil’s actions could constitute willful and wanton behavior in disregard of the employer’s interest in employee attendance and thus, could constitute misconduct as a matter of law. Additionally, we find that McNeil’s record of absenteeism, in combination with his failure to notify Taber despite being warned, provided substantial evidence to support the MESC’s finding that McNeil’s actions constituted misconduct. See Barnett, 583 So.2d at 196. This issue is without merit.[1]
*227 III. WHETHER THE CIRCUIT COURT ERRED AS A MATTER OF LAW IN FAILING TO GIVE EFFECT TO AN ADMINISTRATIVE REGULATION.
¶ 17. The regulation McNeil bases this assignment of error upon states:
An employee shall not be found guilty of misconduct for the violation of a rule unless: (1) the employee knew or should have known of the rule; (2) the rule was lawful and reasonably related to the job environment and job performance; and (3) the rule is fairly and consistently enforced.
M.E.S.C. Administrative Manual, Part V, Section 1720 (emphasis added). Taber’s policies were that when an employee returned from an absence, his supervisor would fill out a form, stating among other things whether there was a reason to believe the FMLA would excuse the absence, and the form was sent to human resources, where points were assessed under the attendance policy. McNeil testified that supervisors “played favorites,” and some supervisors choose not to fill out forms for some employees returning from absences. Therefore, McNeil argues that the attendance policy was not consistently enforced, and his termination could not be for misconduct.
¶ 18. No legal authority is cited for the proposition that an employer must adhere to a policy mechanically, absolutely and without exception. In fact, no such practice could exist, as is illustrated in this case. Gaughf testified that supervisors were required to exercise discretion. McNeil’s own testimony was that he missed a day of work on one occasion when he was first transferred from shipping into the department where he worked until his termination. His supervisor did not report the absence, but McNeil did not question his supervisor about why the supervisor did not report the absence. Despite this one time occurrence, McNeil testified that he expected the policy to be consistently enforced against him. Given McNeil’s testimony, the only conclusion that could be drawn was that there was no arbitrary enforcement of the regulation to prejudice McNeil, and the attendance policy was consistently enforced to give effect to its intended purpose of giving employees an understanding of the consequences of the policy. There is no merit to this assignment of error.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS AFFIRMED.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, THOMAS, LEE, AND GRIFFIS, JJ., CONCUR.
KING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY IRVING AND MYERS, JJ.

. The record discloses that McNeil has a grievance avenue open to him through his union contract.