921 So.2d 360 (2005)
Joe BROOME, Appellant
v.
MISSISSIPPI EMPLOYMENT SECURITY COMMISSION and Mississippi College, Appellees.
No. 2004-CC-00522-COA.
Court of Appeals of Mississippi.
June 14, 2005.
Rehearing Denied September 13, 2005.
*361 Quentin P. McColgin, attorney for appellant.
W. Thomas McCraney, Jackson, Albert B. White, Madison, attorneys for appellees.
Before KING, C.J., CHANDLER and BARNES, JJ.
CHANDLER, J., for the Court.
¶ 1. Joe Broome was discharged from Mississippi College and denied unemployment benefits on the grounds of misconduct. Broome appealed the denial and was granted a hearing before a Mississippi Employment Security Commission (MESC) appeals referee who determined that the benefits had been properly denied. Broome then appealed to the Board of Review, which adopted the findings of fact and opinion of the referee and affirmed. The Circuit Court of Hinds County upheld the Board's denial of benefits. Broome now appeals to this Court, raising the following issue:
WHETHER SUFFICIENT EVIDENCE EXISTED TO SUPPORT THE FINDING THAT THE CLAIMANT'S *362 ACTIONS OR INACTION CONSTITUTED DISQUALIFYING MISCONDUCT
¶ 2. We find that the MESC order disqualifying Carlisle from receiving unemployment benefits was not based on substantial evidence and was, therefore, arbitrary and capricious. We reverse and render.

FACTS
¶ 3. Joe Broome, a floater at Mississippi College, was terminated from his job on December 10, 2002. Broome had a record of unsatisfactory attendance problems during his employment. On July 16, 2001, he was given an unsatisfactory performance review for failing to report to work or notify the department. On January 18, 2002, Glenn Worley, the Director of the Physical Plant, gave a warning to Broome for absences from work, early leaves, and tardiness. Broome was told that continued absences would require written documentation explaining the reason for not being present. On January 28, 2002, Broome received an unsatisfactory performance review, because Broome had not been fully cooperative with campus security regarding an incident that happened the previous day. He was disruptive on the physical plant with personal matters, and he did not get permission to leave the work area on that day. He was suspended for one day as a result of this incident. He received a warning, which he refused to sign. On February 1, 2002, Broome was placed on a sixty day probation period regarding his job performance.
¶ 4. Broome's time cards from May 31, 2002 through December 10, 2002, reflected an excessive number of sick days, vacation days, and early leaves, and a pattern of absences. It is unclear whether these absences were excused. On November 8, 2002, Worley and James Carter, Supervisor of Building Services, had a conference with Broome regarding Broome's having missed work on November 7, 2002. Carter was Broome's immediate supervisor. Carter told Broome that he would need to bring a doctor's note for having missed work on that day. He went to the doctor's office that morning and obtained an excuse that covered November 1 to November 9, even though he had worked Monday, November 4, Tuesday, November 5, and Wednesday, November 6. Carter and Broome were suspicious of this excuse.
¶ 5. On Sunday, December 8, 2002, Broome was arrested and charged with armed robbery and possession of a firearm by a convicted felon. He remained in jail until December 11, when he posted bond. Because he was limited to the telephone calls he could make in jail, he called his girlfriend before his work shift began and asked her to notify his employer that he would be absent from work on December 9 and 10. Broome acknowledged that he did not want his employer to know that he had been arrested, and he did not instruct his girlfriend to tell the truth. However, he did not instruct his girlfriend to give false reasons for his absences. Broome told his girlfriend to state that his absences were due to important personal business. His girlfriend gave as reasons for his absence "family illness" on December 9 and his mother's illness on December 10. Broome testified that he did not know that his girlfriend would tell the employer that he was absent due to family sickness or emergencies.
¶ 6. On December 10, Broome's girlfriend called another employee at Mississippi College and asked if he could raise money for Broome's bail. The employee reported to Carter, and Carter reported to Worley. That afternoon, Worley confirmed the charges with a law enforcement official. After Worley consulted with his *363 own supervisor, Worley decided to terminate Broome.
¶ 7. Broome filed an application for unemployment benefits. The claims examiner denied Broome's application, finding that Broome's absenteeism without proper notification constituted misconduct. Broome appealed to the appeals referee, who held a hearing. The referee was of the opinion that Broome was discharged for falsifying the reason for his absence when he asked his girlfriend to call his employer and inform him that he would be absent from work on December 9 and 10 to take care of personal business. The referee found that, although Broome did not know what reasons his girlfriend would give for Broome's absence, "certainly the claimant did not tell his girlfriend to tell the truth which was that he was incarcerated." This finding was based on Broome's testimony that he did not want his supervisors to know that he had been incarcerated. The referee concluded that Broome did not properly report his absences, willfully and wantonly violated his employer's policies, and committed disqualifying misconduct.
¶ 8. After the appeals referee denied Broome's claim, Broome appealed to the Board of Review, which affirmed the referee's findings. Broome appealed the Board of Review's decision to the Hinds County Circuit Court. The court affirmed, finding that the Board's decision was supported by substantial evidence.

ANALYSIS

WHETHER SUFFICIENT EVIDENCE EXISTED TO SUPPORT THE FINDING THAT THE CLAIMANT'S ACTIONS OR INACTION CONSTITUTED DISQUALIFYING MISCONDUCT
¶ 9. This appeal is governed by Miss.Code Ann. § 71-5-531 (Rev.2000), which provides that the factual findings of the Board of Review, if supported by substantial evidence and in the absence of fraud, shall be conclusive. See also Richardson v. Mississippi Employment Sec. Comm'n, 593 So.2d 31, 34 (Miss.1992); Booth v. Mississippi Employment Sec. Comm'n, 588 So.2d 422, 423 (Miss.1991). Substantial evidence has been defined by the Mississippi Supreme Court to be "such relevant evidence as reasonable minds might accept as adequate to support a conclusion." Public Employees' Retirement System v. Marquez, 774 So.2d 421, 425 (¶ 13) (Miss.2000) (quoting Delta CMI v. Speck, 586 So.2d 768, 768 (Miss.1991)). A decision not based on substantial evidence is "arbitrary and capricious." Marquez, 774 So.2d at 429 (¶ 33).
¶ 10. An employee's claim for unemployment benefits will be denied if he was discharged for misconduct. Miss. Code Ann. § 71-5-513(A)(1)(b) (Rev.2000). The supreme court has defined misconduct as "conduct evincing such willful and wanton disregard of the employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee." Wheeler v. Arriola, 408 So.2d 1381, 1383 (Miss.1982). The employer bears the burden of proof of showing misconduct by clear and convincing evidence. Trading Post, Inc. v. Nunnery, 731 So.2d 1198, 1202 (¶ 15) (Miss.1999).
¶ 11. Broome's employer gives two reasons for discharging Broome and for denying benefits on the basis of misconduct. The first was that Broome did not personally give notice of his absence, which Broome's supervisors claimed was required by the department's rule. The second reason, and the rationale upon which the appeals referee relied, was that he falsified the reason for his absences on December 9 and 10. Carter stated that *364 Broome would not have been terminated if Broome's employer had been properly informed of Broome's incarceration.

(A) Whether Broome's failure to personally give notice constituted misconduct
¶ 12. Mississippi College has an attendance policy requiring an employee who must miss work to notify his supervisor as soon as possible. Worley testified that the policy requiring the employee to notify his supervisor of an absence requires that the employee actually make the call. He testified that each employee is generally told that he is supposed to contact his immediate supervisor. Leaving a message is considered insufficient.
¶ 13. The appeals referee rejected the employer's argument that Broome should be denied unemployment benefits based on his failure to personally contact his supervisor. The referee stated, "The claimant was aware of the policy but could not call the employer himself because he did not have access to the phone in the jail until after business hours." Broome's prior attendance and disciplinary problems were not a factor in denying Broome's benefits; the referee's sole reason for finding misconduct was Broome's falsification of the reasons for his absence.
¶ 14. An employee's violation of an employer's policy does not automatically constitute misconduct. Rather, an employee's conduct must manifest willful and wanton disregard of the employer's interest. Mississippi Employment Sec. Comm'n. v. Jones, 755 So.2d 1259, 1262 (¶¶ 10-11) (Miss.Ct.App.2000). Broome could not have been found guilty of misconduct for violating his employer's policy of personally making the call when the evidence shows that it was impossible for Broome to comply with this directive.

(B) Whether Broome is guilty of misconduct for falsifying the reasons for his absence
¶ 15. To be disqualified for employee benefits based on misconduct, the misconduct must be related to the employee's employment. Miss.Code Ann. § 71-5-513(A)(1)(b) (Rev.2000). Mississippi College stipulates that Broome's arrest does not constitute disqualifying misconduct. Worley testified that, while Broome's criminal charges were serious, they were not the reason Broome was terminated. When Worley visited Broome at the Hinds County jail, he talked to a chaplain. Worley told the chaplain that Broome was not being terminated for his incarceration but for other reasons. Worley testified that Broome was terminated after it was determined that the reasons Broome gave for his absences were untrue. Carter corroborated this testimony and stated that Broome would not have been terminated if he had given the true reasons for his absences and if he also later brought documentation regarding that matter.
¶ 16. Mississippi College asserts that there is a policy that requires those who expect to be absent to state the reasons for not coming to work. Mississippi College's attendance policy provides:
Each employee is important to the smooth operation of the department. If he or she is late or absent, the department suffers. An employee who must miss work because of illness or any other reason, is expected to notify the person to whom he or she is responsible as soon as possible so arrangement [sic] can be made to cover the work. Those who know ahead of time that they must be away are expected to notify their supervisor, and if vacation time is used, fill out a vacation request form. A record of absences is kept.
*365 While this rule requires employees to give timely notice of their absences, nothing about this policy imposes a disclosure duty on its employees. The policy does not impose a duty for an employee to disclose, in advance, the reasons for an employee's absence.
¶ 17. Similarly, the employer's suspension policy does not impose a disclosure duty. This policy provides: "When the infraction is of such a serious nature (theft, willful damage to property or persons or arrests pending outcome of trial) that it may warrant discharge pending review of the facts; an employee may be suspended." This policy permits the suspension of an employee under certain specified conditions, but it does not impose on an employee an obligation to report being arrested, and there is no evidence that the employer construed this policy otherwise.
¶ 18. The only employer directive in evidence that imposes a disclosure duty that is shown to be applicable is the instruction that was set out in the warning that Broome received on January 30, 2002. This document states: "Mr. Broome was warned that continued absences would require written documentation explaining the reason for not being present." The evidence shows that compliance with this directive could be, and routinely was, accomplished by bringing the required documentation when Broome returned to work. As Broome explained at the hearing, he did not tell his girlfriend to tell his employer that he was incarcerated because, in his own words, "I would explain when I... made it back to work." Broome was precluded from complying with this directive by his employer, because he was terminated from his job and banned him from the campus of Mississippi College prior to his release from jail. Since Broome was discharged before he had the opportunity to return to work, it cannot be said that he violated or disregarded this policy.
¶ 19. For an employee to be denied unemployment benefits based on misconduct, there must be a finding that the employee willfully disregarded an employer's interest. Wheeler, 408 So.2d at 1383. "Whenever analyzing `misconduct,' we not only assess violations of an employer's stated policy, but we also consider all action (or inaction) which could be expected of the employee, and which affects the interests of the employer, regardless of whether such actions are included within the stated policy." Mississippi Employment Sec. Comm'n v. Percy, 641 So.2d 1172, 1175 (Miss.1994). In the present case, Broome's supervisors could not identify the employer's interest that Broome violated when he failed to tell his supervisor, in advance, the reasons for his absences.
¶ 20. Mississippi College asserts that Broome's absences without proper notification constitute misconduct. It cites McNeil v. Mississippi Employment Sec. Comm'n, 875 So.2d 221 (Miss.Ct.App.2004) and Barnett v. Mississippi Employment Sec. Comm'n, 583 So.2d 193 (Miss.1991). In both of those cases, however, our courts upheld the MESC's finding of misconduct because the employee was absent from work without first notifying the employer. In this case, Broome made the effort to call his supervisor and tell him that he would be absent.
¶ 21. Mississippi College also correctly notes that employee dishonesty constitutes misconduct. See Mississippi Employment Sec. Comm'n v. Percy, 641 So.2d 1172 (Miss.1994); Mississippi Employment Sec. Comm'n v. Douglas, 758 So.2d 1059 (Miss. Ct.App.2000); Mississippi Employment Sec. Comm'n v. Ratcliff, 754 So.2d 595 (Miss.Ct.App.2000). It asserts that Broome should have told the person that *366 called to report Broome's absence to notify Broome's supervisor of the true reason for his absence. As we have discussed, the evidence shows that Broome was not required to give the reason for his absence until after he returned to work. In this case, Broome was not actually dishonest to his supervisor, nor did he instruct his girlfriend to lie. Although he did not want his employer to know he was incarcerated, he did not instruct his girlfriend to cover up this fact. Broome's embarrassment about being imprisoned and his failure to explicitly tell his girlfriend to tell the truth does not constitute misconduct that demonstrates a willful or wanton disregard for his employer's interests. The referee's finding that Broome was dishonest with his supervisor is unsupported by the record.

CONCLUSION
¶ 22. Although Broome encountered attendance and disciplinary problems during his employment, neither the MESC nor Mississippi College claim that Broome's unemployment benefits should be denied on the grounds of such conduct. Mississippi College gave two reasons to support its contention that Broome's unemployment benefits should be denied on the grounds of misconduct. The first reason is that Broome did not personally make the call to his supervisor to notify him of Broome's absences. The referee rejected this reason, and our case law indicates that misconduct does not occur when it is impossible for an employee to comply with an employer's policy. The second reason given at the hearing is that Broome falsified the reasons for his absences. However, no one from Mississippi College could identify the employer's interest for needing to know, in advance, why Broome would be absent. In addition, the evidence shows that, while Broome's girlfriend gave a false reason for his absence, Broome did not instruct his girlfriend to lie. There is no evidence in the record that demonstrates a willful or wanton disregard for Broome's employer's interests. This Court reverses the judgment of the MESC and grants Broome's application for unemployment benefits.
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS REVERSED AND RENDERED.
KING, C.J., BRIDGES, P.J., IRVING, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. LEE, P.J., CONCURS IN RESULT ONLY. MYERS, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.